**RAY FERGUSON INTERESTS, INC., Appellant,**

v.

**HARRIS COUNTY SPORTS AND CONVENTION CORPORATION, Appellee.**

No. 01–04–00568–CV.

Court of Appeals of Texas, Houston (1st Dist.).

Oct. 7, 2004.

Brian E. Bro, Bro & Ploch, Robert Alan York, David W. Holman, Holman, Keeling & York, P.C., Houston, for Appellant.

Casey T. Wallace, Haynes & Boone, L.L.P., Houston, for Appellee.

Panel Consists of Justices TAFT, JENNINGS, and BLAND.

## OPINION

TIM TAFT, Justice.

Appellant, Ray Ferguson Interests, Inc. ("Ferguson"), appeals from an interlocutory order granting the jurisdictional plea of Harris County Sports and Convention Corporation ("HCSCC").[1] *See* TEX. CIV. PRAC. & REM.CODE ANN. § 51.014(a)(8) (Vernon Supp.2004–2005). We determine whether HCSCC's counterclaim for affirmative relief against Ferguson waived HCSCC's immunity from suit for Ferguson's claims. Answering in the affirmative, we reverse the order and remand the cause with instructions for the trial court to deny HCSCC's jurisdictional plea.

## Standard of Review

In deciding a plea to the jurisdiction, a trial court considers the plaintiff's pleadings and any evidence pertinent to the jurisdictional inquiry. *See Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 555 (Tex.2000); *see also Tex. Natural Res. Conservation Comm'n v. White*, 46 S.W.3d 864, 868 (Tex.2001). We review de novo a trial court's ruling on a jurisdictional plea, construing the pleadings in the plaintiff's favor and looking to the pleader's intent. *See Tex. Natural Res. Conservation Comm'n v. IT–Davy*, 74 S.W.3d 849, 855 (Tex.2002); *Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 446 (Tex. 1993); *Junemann v. Harris County*, 84 S.W.3d 689, 693 (Tex.App.-Houston [1st Dist.] 2002, pet. denied).

## Background

The parties submitted no evidence; thus, our facts come from Ferguson's petition, viewed in Ferguson's favor. *See Tex. Ass'n of Bus.*, 852 S.W.2d at 446.

In 1999, HCSCC awarded Ferguson a contract to build parking lots and ancillary facilities at Reliant Stadium ("the project"). HCSCC worked on the project with three other companies that drafted plans and specifications and functioned as the design team. After HCSCC had issued Ferguson a certificate of substantial completion in 2000, problems occurred with some of the project's structures. Ferguson alleged that the problems arose solely through the fault of HCSCC, its engineers, and its other contractors. HCSCC demanded that Ferguson perform warranty work and withheld a $300,000 retainage fee from Ferguson. Ferguson alleged that it expended over $400,000 in performing remedial work while trying to negotiate a change order with HCSCC, but ceased work when the parties did not reach a resolution.

---

1. As a preliminary matter, HCSCC asserts that we lack subject-matter jurisdiction over Ferguson's interlocutory appeal. However, the Legislature has expressly authorized an interlocutory appeal from an order, such as the one in this cause, granting a governmental unit's jurisdictional plea. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 51.014(a)(8) (Vernon Supp.2004–2005) (permitting interlocutory appeal from order that "grants or denies a plea to the jurisdiction by a governmental unit as that term is defined in [TEX. CIV. PRAC. & REM.CODE ANN.] Section 101.001 . . . ."). In support of its contention, HCSCC relies upon a statement in *Harris County v. Sykes* that "if the court grants the plea to the jurisdiction,

. . . the plaintiff may take an appeal once that judgment becomes final." *Id.*, 136 S.W.3d 635, 638 (Tex.2004). HCSCC's reliance is mistaken: the appeal in *Sykes* was not interlocutory, the quoted statement was dictum, and in support of that dictum, the court cited an earlier opinion (*Cash Am. Int'l, Inc. v. Bennett*, 35 S.W.3d 12, 15 (Tex.2000)) in which the parties were private entities, the judgment was a final dismissal, and the jurisdictional issue was exclusive jurisdiction, not governmental immunity. For these reasons, we decline to construe the dictum in *Sykes* as contradicting section 51.014(a)(8)'s plain language.

Ferguson sued HCSCC and its design-team contractors. Ferguson asserted against HCSCC claims for breach of implied warranty, breach of contract, and negligence in failing to provide Ferguson with plans and specifications that were accurate and suitable and for hiring architects who were not sufficiently experienced. Ferguson further asserted against all of the defendants claims for (1) fraud in withholding material information and (2) civil conspiracy for withholding information from Ferguson, blaming Ferguson for the project's problems, and giving remedial work to others, rather than to Ferguson. Ferguson also sued one of HCSCC's three contractors for negligence. Ferguson sought actual and punitive damages and attorney's fees.

After answering and asserting a counterclaim for damages, HCSCC filed a jurisdictional plea to each of Ferguson's claims. The trial court granted HCSCC's plea and dismissed Ferguson's claims against HCSCC with prejudice.

### Waiver of Immunity from Suit

In its first issue, Ferguson asserts, as it did below, that HCSCC waived its governmental immunity from Ferguson's claims against it by asserting a counterclaim for affirmative relief that arose out of and related to Ferguson's claims. HCSCC responds that it did not waive immunity from suit because its counterclaim was compulsory, not permissive, and, alternatively, because public policy weighs against finding that it waived immunity from suit under these circumstances.

■ HCSCC is a local government corporation created under the Transportation Code. *See* TEX. TRANSP. CODE ANN. § 431.101(a) (Vernon Supp.2004–2005). The purpose of such a corporation is to aid and to act on behalf of one or more local governments to accomplish their governmental purposes. *See id.* § 431.101(a), (c) (Vernon 1999). The Transportation Code defines local government corporations as governmental units, as that term is defined in the Texas Tort Claims Act ("TTCA").[2] *See id.* § 431.108(a) (Vernon Supp.2004–2005). Accordingly, HCSCC is entitled to governmental immunity from suit unless that immunity is waived. *See, e.g., IT-Davy,* 74 S.W.3d at 853.

■ Ferguson asserts that the Texas Supreme Court's recent holding in *Reata Construction Corp. v. City of Dallas* controls. *Id.,* —— S.W.3d ——, 02–1031, 2004 WL 726906 (Tex. Apr.2, 2004). The issue in *Reata* was "whether a city waives its governmental immunity from suit by intervening in a lawsuit to assert claims for affirmative relief." *Id.* at ——, at *1. In *Reata,* Southwest Properties Group, Inc. ("Southwest") sued Dynamic Cable Construction Company, Inc. ("Dynamic") and its sub-contractor, Reata Construction ("Reata"), for negligence after Reata had drilled into a water main, causing water damage to Southwest's building. *Id.* Reata filed a third-party claim against the City of Dallas ("the city"), alleging that the city had misidentified the water main's location. *Id.* The city specially excepted, asserting that the TTCA did not waive governmental immunity from suit for Reata's claims. *Id.* The city also intervened in Southwest's suit against Reata and Dynamic to assert claims against Dynamic. *Id.* The city later amended its intervention petition to assert a negligence claim against Reata, seeking damages, interest, and costs. *Id.* The city did not file a jurisdictional plea to Reata's claims against it until the day after it had pled its counterclaim against Reata. *Id.* The trial

---

**2.** *See* TEX. CIV. PRAC. & REM.CODE ANN. § 101.001(3) (Vernon Supp.2004–2005).

court denied the city's jurisdictional plea, and the court of appeals reversed that order. *Id.* The supreme court reversed the court of appeals's judgment, holding that the city had waived immunity from suit by intervening and asserting a claim for damages against Reata. *Id.* at ——, at *3.

The *Reata* court first reaffirmed its prior holdings that, when a governmental entity " 'voluntarily files a suit and submits its rights for judicial determination, it will be bound thereby, and the defense will be entitled to plead and prove all matters properly defensive. This includes the right to make any defense by answer or cross-complaint germane to the matter in controversy.' " *Id.* at ——, at *2 (quoting *Anderson, Clayton & Co. v. State ex rel. Allred,* 122 Tex. 530, 62 S.W.2d 107, 110 (1933)). Based on this precedent, the *Reata* court held, "[B]y filing a suit for damages, a governmental entity waives immunity from suit for any claim that is *incident to, connected with, arises out of, or is germane to* the suit or controversy brought by the State." *Id.* at ——, at *3 (emphasis added). Based on this law and on the nature of the city's and Reata's claims, the *Reata* court noted that, had the city filed an original petition against Reata, the city would have waived its immunity from suit regarding Reata's claims against it related to the incident. *Id.* The *Reata* court then concluded that, "for purposes of waiver of governmental immunity from suit, we see no reason to differentiate between a governmental entity as a plaintiff and as a plaintiff-intervener." *Id.* The court reasoned that the city "had the option to file its own suit, or in the interest of judicial economy, intervene in

Southwest's suit." *Id.* Accordingly, the court held that "[w]hen the City filed its plea in intervention against Reata, it subjected itself to the jurisdiction of the trial court and waived its governmental immunity from suit with regard to Reata's claims *germane to the matter in controversy.*" *Id.* (emphasis added).

■ We recognize an analogous situation in the cause before us. Here, as did the city in *Reata,* HCSCC asserted claims for affirmative relief. HCSCC's counterclaim against Ferguson, filed in January 2003, sought damages and attorney's fees for Ferguson's alleged breach of contract:

> Plaintiff [Ferguson] is liable to HCSCC for breach of contract. [Ferguson] breached the contract with HCSCC by failing to complete the work it was obligated to perform according to the agreement of the parties. HCSCC has incurred substantial damages as a direct result of [Ferguson's] foregoing actions and inactions[,] for which it seeks recovery from [Ferguson].[3]

" 'To qualify as a claim for affirmative relief, a defensive pleading must allege that the defendant has a cause of action, independent of the plaintiff's claim, on which he could recover benefits, compensation or relief, even though the plaintiff may abandon his cause of action or fail to establish it.' " *Gen. Land Office v. OXY U.S.A., Inc.,* 789 S.W.2d 569, 570 (Tex.1990) (quoting *Weaver v. Jock,* 717 S.W.2d 654, 657 (Tex.App.-Waco 1986, writ ref'd n.r.e.), in context of plaintiff's right to nonsuit). Although some counterclaims may not seek affirmative relief,[4] HCSCC's counterclaim

---

**3.** HCSCC later amended its counterclaim in ways immaterial to our discussion.

**4.** *See Marathon Oil Co. v. Moye,* 893 S.W.2d 585, 590 (Tex.App.-Dallas 1994, no writ) ("A

defendant raising a declaratory judgment counterclaim is not necessarily seeking affirmative relief" within context of offensive-use waiver of privilege).

clearly did.[5] Also as in *Reata*, HCSCC did not file its jurisdictional plea until after it had filed its original counterclaim—over six months afterwards, in fact.

Finally, as in *Reata*, HCSCC's contract-breach counterclaim is "incident to, connected with, arises out of, or is germane to" the "matter in controversy" between HCSCC and Ferguson and to Ferguson's claims. *Reata*, —— S.W.3d at ——, 2004 WL 726906, at * 3 (in part, quoting from *Anderson, Clayton & Co.*). Ferguson's live petition alleged that HCSCC breached the parties' contract by failing to issue Ferguson a change order to correct design deficiencies, failing to direct Ferguson to perform "warranty work," failing to pay Ferguson its retainage fee, failing to issue a certificate of final completion, and failing to provide Ferguson with accurate, complete, and suitable design plans and specifications. Ferguson also alleged that HCSCC had breached implied warranties by failing to provide plans and specifications that were accurate and suitable for Ferguson's work. Ferguson further alleged that HCSCC had committed fraud by withholding material information regarding the project. Additionally, Ferguson alleged that HCSCC was negligent in failing to provide plans and specifications that were accurate and suitable and in hiring insufficiently experienced architects for the project. Finally, Ferguson's claim for civil conspiracy alleged that HCSCC and the other defendants withheld material information from Ferguson, blamed Ferguson for the project's problems, and gave remedial work to outside parties and to Ferguson's subcontractors, rather than to Ferguson.

Our sister court of appeals has recently concluded that the term "germane"—both in its general meaning and in the "incident to, connected with, arises out of, or is germane to" holding from *Reata*—is not narrower in scope than the test for a compulsory counterclaim. *City of Dallas v. Redbird Dev. Corp.*, 143 S.W.3d 375, 381-383 (Tex.App.-Dallas, 2004, no pet. h.). Accordingly, our sister court read *Reata's* phrase "incident to, connected with, arises out of, or is germane to" rather broadly to include claims that "arise from the same transaction" and that "depend[ ] on facts pertinent to the parties' conduct regarding the same" transaction. *Id.* at ——, at *5 (holding that city plaintiff, which had sued private-entity defendant for unpaid rent and late charges under lease, thereby waived immunity from suit for defendant's counterclaims for breach of contract in city's wrongfully terminating same lease). The claims that Ferguson asserts fit this test. *See id.; see also State v. Fid. & Deposit Co. of Md.*, 127 S.W.3d 339, 344–45 (Tex.App.-Austin 2004, pet. filed) (holding that State plaintiff, which sued defendant bond company for failure to perform under performance bond insuring contractor who had defaulted, waived immunity from suit for defendant's counterclaims for

5. *See In re C.A.S.*, 128 S.W.3d 681, 686 (Tex. App.-Dallas 2003, no pet.) (noting that counterclaim for attorney's fees for prosecution of defense is claim for affirmative relief); *cf. Criton Corp. v. Highlands Ins. Co.*, 809 S.W.2d 355, 357 (Tex.App.-Houston [14th Dist.] 1991, writ denied) ("Layton's pleading claimed that Criton had breached the subcontract causing damage to Layton. Thus, Criton's argument that Layton did not seek affirmative relief and damages ... is not supported by the record."); *Henry S. Miller Mgmt. Corp. v. Hous-* ton *State Assocs.*, 792 S.W.2d 128, 130–31 (Tex.App.-Houston [1st Dist.] 1990, writ denied) (holding that pleadings asserting, among other things, contract breach gave sufficient notice of claim for affirmative relief, in part because plaintiff prayed for damages). The fact that HCSCC's claim was for affirmative relief is further evidenced by the fact that its counterclaim currently remains pending, even though Ferguson's claims have been dismissed. *See Gen. Land Office v. OXY U.S.A., Inc.*, 789 S.W.2d 569, 570 (Tex.1990).

State's having improperly terminated the insured and for having breached subsequent "takeover agreement," under which bond company had contracted with State to complete insured's work; counterclaims "relate[d] to same core factual and legal issues"); *City of Carrollton v. Golf Works, Inc.*, No. 05–03–01831–CV, 2004 WL 1700229, at *1 (Tex.App.-Dallas July 30, 2004, no pet.) (memo.op.) (holding that State's suing private-entity defendant for breach of contract waived immunity from suit for defendant's counterclaims for tort and breach of contract).

The principal difference between this case and *Reata* is that the governmental entity in *Reata* intervened to assert affirmative relief, whereas HCSCC counterclaimed to do so. We conclude that this distinction does not warrant a different result in the circumstances before us. "Any party may intervene by filing a pleading, subject to being stricken out by the court for sufficient cause on the motion of any party." TEX.R. CIV. P. 60. One has the right to intervene if one "could have brought the same action, or any part thereof, in his own name, or if the action had been brought against him, he would be able to defeat recovery, or some part thereof." *Guar. Fed. Sav. Bank v. Horseshoe Operating Co.*, 793 S.W.2d 652, 657 (Tex.1990). Like an intervener, one asserting a counterclaim for affirmative relief is also asserting the type of claim that

could be brought in his own name if he filed his own suit. *See OXY U.S.A., Inc.*, 789 S.W.2d at 570 (defining claim for affirmative relief as " 'defensive pleading . . . alleg[ing] that the defendant has a cause of action, independent of the plaintiff's claim, on which he could recover benefits, compensation or relief, even though the plaintiff may abandon his cause of action or fail to establish it.' ") (quoting *Weaver*, 717 S.W.2d at 657).

Two of our sister courts of appeals have recently applied *Reata's* holding to situations in which a governmental entity has asserted a counterclaim for affirmative relief. *See City of Dallas v. Martin*, 140 S.W.3d 924, 926 (Tex.App.-Dallas 2004, no pet. h.); *City of Irving v. Inform Constr., Inc.*, 143 S.W.3d 371, 374 (Tex.App.-Dallas, 2004, no pet. h.) (so holding despite fact that city's counterclaim was compulsory); *City of Dallas v. Albert*, 140 S.W.3d 920, 922–23 (Tex.App.-Dallas 2004, pet. granted); *Port Neches–Groves Indep. Sch. Dist. v. Pyramid Constructors, L.L.P.*, 140 S.W.3d 440, 442–43 (Tex.App.-Beaumont July 1, 2004, pet. filed). On this Court, Justice Hanks has reached the same conclusion as we now do. *See Metro. Transit Auth. v. MEB Eng'g, Inc.*, — S.W.3d ——, No. 01–04–00022–CV, 2004 WL 1584958, at *3–5 (Tex.App.-Houston [1st Dist.] July 15, 2004, no pet. h.) (Hanks, J., concurring). We join Justice Hanks and so hold for the Court.[6]

---

**6.** HCSCC cites two opinions in support of its position. The first opinion predates *Reata* and does not expressly hold what HCSCC claims. *See Wallace v. City of Midland*, 836 S.W.2d 641, 643 (Tex.App.-El Paso 1992, writ denied) (rejecting the appellant's contention that two opinions that the appellant cited held that a governmental entity waived immunity by asserting claim for affirmative relief, but not expressly holding the same thing itself). The second opinion, *Fluor Daniel, Inc. v. Travis County, Tex.*, No. 02–50378, slip op. at 5–8, 67 Fed.Appx. 248 available at ftp://opin-ions.ca5.uscourts.gov/unpub/02/ (5th Cir. Apr. 30, 2003) (not designated for publication), does hold what HCSCC claims, but predates *Reata* and relies, in part, on *Wallace*. *Id.*, slip op. at 6. Additionally, the governmental defendant in *Fluor Daniel* had asserted its governmental immunity from suit throughout the lower-court proceedings, asserted its counterclaims and third-party claims only after having lost its motion to dismiss on grounds of governmental immunity, and asserted its claims subject to and without waiving its governmental immunity. *Id.*, slip op. at 6–7.

HCSCC responds that the rule in *Reata* does not apply because HCSCC's counterclaim was compulsory, not permissive, thereby rendering HCSCC's assertion of that counterclaim involuntary. For a counterclaim to be compulsory, the following criteria must exist: "(1) [the counterclaim] is within the jurisdiction of the court; (2) it is not at the time of filing the answer the subject of a pending action; (3) the claim is mature and owned by the defendant at the time of filing the answer; (4) it arose out of the same transaction or occurrence that is the subject matter of the opposing party's claim; (5) it is against an opposing party in the same capacity; and (6) it does not require the presence of third parties over whom the court cannot acquire jurisdiction." *Ingersoll–Rand Co. v. Valero Energy Corp.*, 997 S.W.2d 203, 207 (Tex.1999) (citing, among other authority, Tex.R. Civ. P. 97(a), (d)). The doctrine of *res judicata* will bar a party who fails to assert a compulsory counterclaim from asserting that claim in a later suit. *Ingersoll–Rand Co.*, 997 S.W.2d at 207.

If a governmental entity truly enjoys immunity from a plaintiff's claims, then the entity's failure to assert its counterclaims for affirmative relief—even counterclaims that would normally be considered compulsory—cannot have the preclusive effect that a such a failure would have in other contexts. Governmental immunity from suit deprives the trial court of subject-matter jurisdiction over a plaintiff's claims against a governmental entity. *See Harris County v. Sykes*, 136 S.W.3d 635, 638 (Tex.2004). Accordingly, when a trial court determines that a governmental entity's immunity from suit has not been waived, the court has no subject-matter jurisdiction to consider the plaintiff's claims, and the court must thus grant the entity's jurisdictional plea and dismiss the cause. *See id.* at 639. In that situation, the governmental-entity defendant need not assert *any* counterclaim for affirmative relief because, there being no plaintiff's claim over which the court may exercise jurisdiction, there can be no bar on the merits if the governmental entity later files its own suit on its related claims. *See Compania Financiara Libano, S.A. v. Simmons*, 53 S.W.3d 365, 367 (Tex.2001) ("The doctrine of res judicata ... holds that a *final judgment* in an action bars the parties and their privies from bringing a second suit 'not only *on matters actually litigated,* but also on *causes of action or defenses* which arise out of the same subject matter and *which might have been litigated* in the first suit.' ") (quoting *Barr v. Resolution Trust Corp.*, 837 S.W.2d 627, 630 (Tex.1992)) (emphasis added).

If, in contrast, a court determines that a defendant governmental entity enjoys no immunity from suit for a plaintiff's claim and thus denies the entity's jurisdictional plea, the governmental entity then must assert its compulsory counterclaim for affirmative relief, as any other defendant would have to do. The proper procedure is thus for the defendant governmental entity to file and to seek a ruling on its jurisdictional plea *before* filing what would normally be a compulsory counterclaim for affirmative relief. Alternatively, the governmental entity could first file its jurisdictional plea, then file its "compulsory" counterclaim for affirmative relief expressly subject to its jurisdictional plea and contingent upon the plea's denial. HCSCC did neither of these things. The assertion of its counterclaim for affirmative relief was thus voluntary and constituted a waiver of its immunity from suit for Ferguson's claims that were "germane to the matter in controversy." *See Reata,* —— S.W.3d at ——, 2004 WL 726906, at *3.

HCSCC alternatively argues that public policy considerations caution against

recognizing the assertion of its affirmative counterclaim as a waiver of its immunity from suit. However, HCSCC's policy arguments presume that its counterclaim was compulsory and that HCSCC would thus have to assert the claim in this suit or be forever barred. We have already rejected this premise.

██ Moreover, our holding is correct for another reason. If HCSCC had filed its own lawsuit asserting its claim against Ferguson, Ferguson could unquestionably have prosecuted any counterclaims that were "incident to, connected with, ar[ose] out of, or [were] germane to" HCSCC's suit. *See Reata,* —— S.W.3d at ——, 2004 WL 726906, at *3. However, if HCSCC's position is correct, then simply because Ferguson sued first, HCSCC may assert the same claim in the form of a counterclaim, but Ferguson may assert no claim against HCSCC, even if that claim is incident to, connected with, arises out of, or is germane to HCSCC's counterclaim. In short, HCSCC's position allows it to assert its own claims while still shielding itself behind an immunity that would otherwise be unavailable in analogous circumstances. This cannot be the law.

For these reasons, we sustain Ferguson's first issue.[7] Given our disposition of this issue, we need not reach Ferguson's second issue, which asserts that the Transportation Code's incorporation by reference of a provision containing "sue and be sued" language within the Non–Profit Corporation Act also waived HCSCC's immunity from suit. *See* Tex. Transp. Code Ann. §§ 431.062(a), 431.101(b), (c) (Vernon

1999 & Supp.2004–2005); *id.* § 431.006 (Vernon 1999); Tex.Rev.Civ. Stat. Ann. art. 1369–2.02(A)(2) (Vernon 2003).

### Conclusion

We reverse the order and remand the cause with instructions for the trial court to deny HCSCC's jurisdictional plea.

---

7. We note, as does Ferguson in his brief, that this appeal does not involve immunity from liability. The trial court sustained HCSCC's jurisdictional plea and dismissed Ferguson's claims for want of subject-matter jurisdiction. HCSCC's immunity from liability is not a jurisdictional matter. *See, e.g., City of Cleburne v. Trussell,* 10 S.W.3d 407, 410 (Tex.

App.-Waco 2000, no pet.) (holding that plea to jurisdiction was not appropriate vehicle to contest type of damages that plaintiffs sought). The trial court could thus not have reached issues relating to immunity from liability because it concluded that it had no jurisdiction over Ferguson's claims.