Opinion issued February 1, 2007 

 











In The

Court of Appeals

For The

First District of Texas






NO. 01-06-00069-CV






SWEENY COMMUNITY HOSPITAL, Appellant


V.


RODOLFO MENDEZ, M.D., Appellee






On Appeal from 239th District Court

Brazoria County, Texas

Trial Court Cause No. 9617




 

O P I N I O N

 Appellant, Sweeny Community Hospital ("Sweeny"), sued appellee, Rodolfo
Mendez, M.D., for breach of contract. Mendez countersued for breach of contract,
fraud, tortious interference, defamation, and retaliation. Sweeny filed a plea to the
jurisdiction contending that it was immune from suit for tortious interference,
defamation, and retaliation. The trial court denied the plea to the jurisdiction, from
which ruling Sweeny appeals. (1) We determine whether the trial court erred by denying
the plea to the jurisdiction because Sweeny's governmental immunity from suit (1) for
tortious interference, defamation, and retaliation was not waived by its affirmative
claim for relief of breach of contract; (2) for retaliation was not waived by section
161.135 of the Health and Safety Code; (2) and (3) for tortious interference and
defamation was not waived by the Texas Tort Claims Act (3) ("TTCA"). We affirm the
order of the trial court. 


Facts

 On August 9, 1996, Mendez and Sweeny executed a written contract ("the
contract"). Mendez agreed to establish a full-time medical practice in Sweeny, Texas,
for 24 months, beginning September 30, 1996. Sweeny agreed to subsidize Mendez's
net income to ensure Mendez a monthly income of $16,666.66. The contract provided
that it could be terminated upon the happening of any of the following events: (1)
Mendez's medical license was suspended or revoked by the State of Texas, (2)
Mendez's medical staff privileges at Sweeny were terminated in accordance with
Sweeny's medical staff by-laws, (3) Mendez's professional liability insurance was
canceled, (4) Mendez's application for medical staff at Sweeny was denied for
whatever reason, (5) Mendez or Sweeny materially breached the contract, (6) death or
long-term disability of Mendez occurred, or (7) Sweeny and Mendez mutually
consented in writing to terminate the contract prior to the end of the 24-month term. 
The contract provided that if the contract was terminated for any of the above reasons,
except for material breach of the contract by Sweeny or long-term disability of
Mendez, Mendez would be required to repay Sweeny within 12 months the sum of all
unreimbursed subsidy advances paid on Mendez's behalf, with interest from the date
that the agreement was terminated. The contract also provided that Mendez could
elect to terminate his obligations upon the failure of Sweeny to meet any of its
obligations. On January 13, 1998, Mendez gave Sweeny notice of termination. On
January 20, 1998, Sweeny gave written consent to the termination, effective February
18, 1998.

 On September 24, 1999, Sweeny filed a breach-of-contract lawsuit against 
Mendez. In its petition, Sweeny claimed that Mendez owed it $299,760.00 in
unreimbursed subsidy advances plus interest at the rate of eight percent per annum.
Mendez denied that he had breached the contract and filed counterclaims for (1)
breach of contract, (2) fraud, (3) retaliation under section 161.134 of the Health and
Safety Code and section 554 of the Government Code jointly, (4) retaliation under
section 161.135 of the Health and Safety Code, (4) (5) tortious interference, and (6)
defamation. The parties stipulated to a dismissal of Mendez's counterclaims for
retaliation under section 161.134 of the Health and Safety Code and section 554 of the
Government Code because Mendez was not an employee. (5) Therefore, at the time of
the court's ruling, Mendez's retaliation claim was brought solely under section
161.135 of the Health and Safety Code.

 In his petition, Mendez alleged that he became aware of serious deficiencies
and violations of laws and regulations by Sweeny. When Sweeny refused to remedy
those deficiencies, Mendez stopped referring and admitting patients to Sweeny and
reported it to outside governmental agencies. Mendez alleged in his petition that
Sweeny retaliated against him by "not paying his monthly subsidy on time, contesting
reasonable expenses in his monthly reports, bringing false charges against him to
attempt to have his credentials revoked at the hospital and destroy his reputation as a
physician, breaching the lease he had with Sweeny for office space, trespassing into
his office and home and taking his property, and undermining his medical practice." 
Mendez claimed that as a result of Sweeny's breach of contract, he was forced to
terminate the contract, to close his practice, and to look elsewhere for work. Mendez
also claimed that Sweeny continued its retaliation after Mendez's termination by
"interfering, and continuing to interfere, with his attempts to find subsequent
employment. Such interference included acts of defamation, all of which interfered
with and resulted in the loss of two separate work opportunities with hospitals." 

 On September 20, 2005, Sweeny filed a "Motion To Dismiss For Lack Of
Jurisdiction," contending that it was immune from suit for tortious interference,
defamation, and retaliation. (6) The trial court denied Sweeny's plea to the jurisdiction
on December 27, 2005. 

Standard and Scope of Review


 Subject-matter jurisdiction is essential for a court to have the authority to resolve
a case, and trial courts lack such jurisdiction over a governmental unit that is immune
from suit. Tex. Ass'n of Bus. v. Tex. Air Control Bd., 852 S.W.2d 440, 443 (Tex. 1993). 
A party may challenge a court's subject-matter jurisdiction by filing a plea to the
jurisdiction. See Tex. Dep't of Transp. v. Jones, 8 S.W.3d 636, 638-39 (Tex. 1999).
We review the trial court's ruling on such a plea de novo because jurisdiction is a
question of law. Mayhew v. Town of Sunnyvale, 964 S.W.2d 922, 928 (Tex. 1998). In
conducting this de novo review, we do not examine the underlying merit of the
plaintiff's case, but consider only the plaintiff's pleadings and the evidence pertinent
to the jurisdictional inquiry. County of Cameron v. Brown, 80 S.W.3d 549, 555 (Tex.
2002). We construe the pleadings liberally in favor of conferring jurisdiction. Tex.
Dep't of Transp. v. Ramirez, 74 S.W.3d 864, 867 (Tex. 2002); Tex. Ass'n of Bus., 852
S.W.2d at 446.

 The plaintiff bears the burden to allege facts affirmatively demonstrating the trial
court's jurisdiction to hear the case. Dallas Area Rapid Transit v. Whitley, 104 S.W.3d
540, 542 (Tex. 2003); Tex. Ass'n of Bus., 852 S.W.2d at 446. Because a governmental
unit is protected from suit by governmental immunity, pleadings in a suit against a
governmental unit must affirmatively demonstrate, either by reference to a statute or
express legislative permission, that the Legislature consented to the suit. Jones, 8
S.W.3d at 638. Absent the government's consent to suit, the trial court has no
jurisdiction over the cause of action. Id. To prevail on a plea to the jurisdiction, the
defendant must show an incurable jurisdictional defect apparent from the face of the
pleadings, making it impossible for any amendment of the plaintiff's petition to confer
jurisdiction on the trial court. Bybee v. Fireman's Fund Ins. Co., 331 S.W.2d 910, 914
(Tex. 1960); City of San Angelo v. Smith, 69 S.W.3d 303, 305 (Tex. App.--Austin
2002, pet. denied). 


Governmental Immunity (7)


 In Texas, governmental immunity deprives a trial court of subject-matter
jurisdiction for lawsuits in which governmental entities have been sued unless the 
governmental entities consent to suit. Tex. Dep't of Parks & Wildlife v. Miranda, 133
S.W.3d 217, 224 (Tex. 2004). Governmental immunity includes two distinct
principles: immunity from suit and immunity from liability. Id. Immunity from
liability is an affirmative defense, while immunity from suit deprives a court of
subject-matter jurisdiction. Id. Immunity from suit bars a suit against the State unless
the Legislature expressly consents to the suit. Tex. Natural Res. Conservation Comm'n
v. IT-Davy, 74 S.W.3d 849, 853 (Tex. 2002). If the Legislature has not expressly
waived immunity from suit, the State retains immunity even if its liability is not
disputed. Id. Immunity from liability protects the State from money judgments even
if the Legislature has expressly given consent to sue. Id.

 

 Sweeny is a political subdivision of the State of Texas. See Tex. Const. art. IX,
§§ 4-11 (providing for the creation of hospital districts); Tex. Civ. Prac. & Rem.Code
§ 101.001(3) (Vernon 2005); Tex. Rev. Civ. Stat. Ann. art. 4494q (Vernon Supp.
2006) (listing hospital districts); Act of April 30, 1963, 1968, 58th Leg., R.S., ch. 135,
§ 16, 1963 Tex. Gen. Laws 361, 366 (the "enabling statute") (creating Sweeny Hospital
District). Accordingly, governmental immunity deprives the trial court of
subject-matter jurisdiction for Mendez's lawsuit against Sweeny unless immunity has
been waived or Mendez's claims do not implicate immunity from suit in the first
instance. Miranda, 133 S.W.3d at 224; Wichita Falls State Hosp. v. Taylor, 106
S.W.3d 692, 694 n.3 (Tex. 2003).

 In its first and second points of error, Sweeny argues that its immunity from suit
was not waived (1) for tortious interference, defamation, and retaliation by its
affirmative claim for relief under breach of contract; (2) for retaliation by section
161.135 of the Health and Safety Code; (3) for tortious interference and defamation by
the TTCA; or (4) for tortious interference, defamation, and retaliation by the "sue and
be sued" language in its enabling statute.

Sweeny's Affirmative Claim for Relief


 Sweeny argues that Mendez's counterclaims for tortious interference,
defamation, and retaliation do not fall within the scope of any waiver of immunity from
suit resulting from Sweeney's suit for breach of contract. Specifically, Sweeny argues
that Mendez's claims for tortious interference, defamation, and retaliation are not
germane to, connected with, and properly defensive to Sweeny's breach-of-contract
claim. 

A. The Law

 1. Reata I and Reata II

 In its second opinion in Reata Construction Corp. v. City of Dallas, the supreme
court held that a governmental entity that brings suit against a private entity does not
have immunity as to the private entity's claims that are "germane to, connected with,
and properly defensive to the [governmental entity]'s claims, to the extent [the private
entity]'s claims offset those asserted by the [governmental entity]." Id., 197 S.W.3d
371, 378 (Tex. 2006) ("Reata II"). In contrast, in Reata I, the supreme court had
previously held, "'[B]y filing a suit for damages, a governmental entity waives
immunity from suit for any claim that is incident to, connected with, arises out of, or
is germane to the suit or controversy brought by the State.'" Ray Ferguson Interests v.
Harris County Sports & Convention Corp., 169 S.W.3d 18, 23 (Tex. App.--Houston
[1st Dist.] 2004, no pet.) (quoting Reata I, No. 02-1031, 2004 WL 726906, at *3 (Tex.
Apr. 2, 2004) (per curiam)) (emphasis in original). Thus, Reata II modified the test of
Reata I. Because "germane to" and "connected with" are common to both opinions,
the material differences between the two opinions are as follows: "properly defensive
to" and the conjunction "and" in Reata II, versus "incident to," "arises out of," and the
conjunction "or" in Reata I.

 In Reata II, the supreme court explained:

 [T]he decision by the [governmental entity] to file suit for
damages encompassed a decision to leave its sphere of
immunity from suit for claims against it which are germane
to, connected with and properly defensive to claims the
[governmental entity] asserts.


Reata II, 197 S.W.3d at 377 (emphasis added). The supreme court noted that,
generally, a lack of immunity hampers governmental functions by requiring tax
resources to be used for defending lawsuits and for paying judgments, rather than for
their intended purposes. Id. at 375. The supreme court reasoned, however, that "if the
governmental entity interjects itself into or chooses to engage in litigation to assert
affirmative claims for monetary damages, the entity will presumably have made a
decision to expend resources to pay litigation costs." Id. Thus, "a determination that
a governmental entity's immunity from suit does not extend to a situation where the
entity has filed suit is consistent with the policy issues involved with immunity." Id. 
The supreme court concluded, "If the opposing party's claims can operate only as an
offset to reduce the government's recovery, no tax resources will be called upon to pay
a judgment, and the fiscal planning of the governmental entity should not be
disrupted." Id. "[I]t would be fundamentally unfair to allow a governmental entity to
assert affirmative claims against a party while claiming it had immunity as to the
party's claims against it." Id. at 375-76.

 2. Authority on Which the Reata II Court Relied

 In Reata II, the supreme court relied on Anderson, Clayton & Co. v. State ex
rel. Allred, (8) State v. Humble Oil & Refining Co., (9) and Kinnear v. Texas Commission on
Human Rights ex rel. Hale (10) to hold that a governmental entity does not enjoy
immunity from suit in the first instance for claims against it that are germane to,
connected with, and properly defensive to claims that the governmental entity asserts. 
See Reata II, 197 S.W.3d at 376-77. 

 In Anderson, Clayton & Co., the governmental entity sought penalties from and
a temporary injunction against a company for statutory violations. Id., 62 S.W.2d 107,
107 (Tex. 1933). The company in turn counterclaimed, seeking an injunction against
the governmental entity. Id. at 107-08. In noting the general rule that the
governmental entity was immune from suit, the supreme court stated that "where a state
voluntarily files a suit and submits its rights for judicial determination, it will be bound
thereby, and the defense will be entitled to plead and prove all matters properly
defensive. This includes the right to make any defense by answer or cross-complaint
germane to the matter in controversy." Id. at 110.

 In Humble Oil & Refining Co., the governmental entity sued an oil company to
recover taxes, and the company claimed an offset for overpayment of taxes in the
previous year. Id., 169 S.W.2d 707, 710 (Tex. 1943). Because the offset claim was for
taxes owed for a different taxing period, the supreme court reasoned that the offset
claim had "no connection with [governmental entity's claim for taxes], and the two
claims [were] entirely independent of each other." Id. The supreme court announced
that the rule stated in Anderson, Clayton & Co. did not apply. Id. at 709-10. 

 In Kinnear, a governmental entity sued an individual for violating the Texas Fair
Housing Act. Id., 14 S.W.3d 299, 300 (Tex. 2000). The individual defendant filed a
claim against the governmental entity for attorney's fees pursuant to the same statute. 
Id. The trial court held that "[b]ecause the [governmental entity] initiated this
proceeding under the Texas Fair Housing Act, and [the individual defendant] claimed
attorney fees as a consequence of that suit, the jurisdictional question in this case [i.e.,
immunity from suit] was answered when the [governmental entity] filed suit. . . ." Id.

 

 3. Authority on Which Mendez Relies

 Mendez argues that his reliance on State v. Precision Solar Controls, Inc. is
proper and dispositive of this issue. Id., 188 S.W.3d 364, 372 (Tex. App.--Austin
2006, pet. denied). Under facts similar to those here, our sister court held that, by suing
for breach of contract, breach of warranty, and quatum meruit, the governmental entity
"waived" immunity from suit against a manufacturer's intentional-tort counterclaim for
business disparagement. Id. The Precision Solar Controls, Inc. court reasoned that
"[a]lthough the elements of the claims differ, the core facts are the same, and the issues
. . . are necessary to the claims asserted by both the State and [the manufacturer]. If
[the manufacturer] were not to bring this counterclaim now and attempt to raise it later,
[governmental] immunity issues aside, factual determinations made in this proceeding
about the quality of the signals and whether [the manufacturer] breached any contracts
or warranties would be res judicata on [the manufacturer's] later claim for business
disparagement." Id.

 This Court likewise has held that by asserting compulsory counterclaims in
response to a suit brought by a company, the governmental entity waived immunity
from suit for the company's claims for the intentional torts of fraud and conspiracy
because they were "germane to the matter in controversy." Ray Ferguson Interests,
169 S.W.3d at 26-27. However, both appellate courts decided the appeals based on
Reata I, i.e., before the Texas Supreme Court withdrew its opinion on rehearing and
altered the key language on which the Ray Ferguson Interests and Precision Solar
Controls, Inc. courts relied.

B. Analysis

 Sweeny concedes that it enjoys no immunity from suit for Mendez's
counterclaims for breach of contract and fraud, and in any event, Sweeny did not seek
dismissal of those claims, so that no ruling concerning them is before us. We now
determine whether Mendez's counterclaims for tortious interference, defamation, and
retaliation are germane to, connected with, and properly defensive to Sweeny's breach-of-contract claim.

 Sweeny contends that Mendez's counterclaims cannot be considered germane
to, connected with, and properly defensive to Sweeny's claim because "there are no
common findings required between Sweeny's breach of contract action and Mendez'[s]
counter-claims for [tortious interference, defamation] and retaliation" and because
"some of the alleged activity [of Mendez's counterclaims] occurred outside the period
of the contract at issue." Sweeny also contends that "because Reata[II] held that
negligence claims on both sides were 'germane to, connected with, and properly
defensive' Sweeny has not waived its immunity to Mendez['s] intentional tort and
retaliation claims by initiating a breach of contract suit." We construe this portion of
Sweeny's argument to be that Mendez's counterclaims are of a different nature and
arise from a different body of law and facts from Sweeny's claims and thus cannot be
considered germane to, connected with, and properly defensive to Sweeny's claims. 

 Sweeny is correct that tortious interference, defamation, and retaliation do not
mirror the breach-of-contract claim that it brought against Mendez. However, we
disagree that it is necessary for Mendez's counterclaims to mirror the cause of action
brought by Sweeny. We view Reata II as having two dimensions of analysis: first, the
party's claim must be sufficiently related to the governmental unit's affirmative claim
for relief, and second, the party's amount of a claim for damages against the
governmental entity is restricted to the amount that the governmental entity will
actually recover.

 1. Germane To and Connected With

 In common usage, the term "germane" means "closely akin," "being at once
relevant and appropriate," "closely or significantly related," "relevant," and "pertinent." 
See City of Dallas v. Redbird Dev. Co., 143 S.W.3d 375, 381 (Tex. App.--Dallas
2004, no pet.); Merriam-Webster's Collegiate Dictionary 525 (11th ed. 2003);
Random House Webster's Unabridged Dictionary 800 (2d ed. 2001). This Court
and its sister court have concluded that the term "germane"--both in its general
meaning and as used in the "incident to, connected with, arises out of, or is germane
to" holding from Reata I--is not narrower in scope than the test for a compulsory
counterclaim. Ray Ferguson Interests, 169 S.W.3d 18 at 24; Redbird Dev. Co., 143
S.W.3d at 383. Rule 97 of the Texas Rules of Civil Procedure requires parties to assert
any counterclaim "not the subject of a pending action, which at the time of filing . . .
the pleader has against any opposing party, if it arises out of the transaction or
occurrence that is the subject matter of the opposing party's claim" and does not
require the presence of third parties over whom the trial court could not exercise
jurisdiction. Tex. R. Civ. P. 97(a) ("Compulsory Counterclaims") (emphasis added). 
Consequently, "[a] compulsory counterclaim is germane to the opponent's claim by its
very nature." Redbird Dev. Co., 143 S.W.3d at 383. 

 In common usage, the term "connected" means "united, joined or linked" and
"joined together in sequence; linked coherently" and "having parts or elements
logically linked together." Merriam-Webster's Collegiate Dictionary 525 (11th
ed. 2003); Random House Webster's Unabridged Dictionary 800 (2d ed. 2001). 

 Here, Sweeny--not Mendez--initiated suit to recover for breach of contract. 
Mendez thereafter filed counterclaims for breach of contract, fraud, tortious
interference, defamation, and retaliation. Sweeny's claim and Mendez's claims arise
from the same transaction: the breach of the contract and the fulfillment or non-fulfillment of obligations by the parties under that contract. Resolution of the rights
of the parties depends on facts pertinent to Sweeny's conduct regarding that breach,
and the added claims are thus germane to the matter in controversy. See Ray Ferguson
Interests, 169 S.W.3d 18 at 24; Redbird Dev. Co., 143 S.W.3d at 383.

 To succeed on its claim for breach of contract, Sweeny will have to show that
Mendez did not perform his obligations under the contract and that Sweeny performed
its obligations under the contract. (11) Mendez's claim for retaliation will in part require
contrary findings that Sweeny did not meet its obligation because it failed to pay
Mendez the monthly subsidy on time, contested reasonable expenses in Mendez's
monthly reports, breached the lease that Mendez had with Sweeny, and attempted to
have Mendez's credentials revoked. Mendez's claims for tortious interference and
defamation will in part require findings that Mendez performed under the contact by
satisfying his obligations, thereby making Sweeny's alleged statements to other
hospitals of Mendez's breach false. Although the elements of the claims differ, the
core facts are the same, and determining whether Sweeny and Mendez met their
obligations under the contract is necessary to the claims asserted by both Sweeny and
Mendez. Thus, without commenting on the merits of either parties' claims, but based
on the face of the pleadings, we hold that the issues that will arise in Mendez's 
counterclaims are germane to and connected with Sweeny's breach-of-contract claim.

 2. Properly Defensive To

 Sweeny argues that "any waiver [sic] of immunity to suit should be limited to the
extent of [its breach-of-contract] claim." Specifically, Sweeny argues that under Reata
II, Mendez's claims can operate only as an offset to reduce Sweeny's recovery,
reasoning that because Mendez's claims for tortious interference, defamation, and
retaliation "carry with them exemplary and punitive damages," this Court should
dismiss those claims. Mendez responds that the language "properly defensive to" is
not a limit on the type of claim that may be asserted, but, rather, on the amount of
damages that can be recovered against a governmental entity.

 In Reata II, the supreme court reasoned, "Once [the governmental entity] asserts
affirmative claims for monetary recovery, the [governmental entity] must participate
in the litigation process as an ordinary litigant, save for the limitation that the
[governmental entity] continues to have immunity from affirmative damage claims
against it for monetary relief exceeding amounts necessary to offset the [governmental
entity's] claims." Reata II, 197 S.W.3d at 377. The supreme court concluded that
"[a]bsent the Legislature's waiver of the [governmental entity's] immunity from suit,
however, the trial court [does] not acquire jurisdiction over a claim for damages against
[the governmental entity] in excess of damages sufficient to offset the [governmental
entity's] recovery, if any." Id. (citing City of LaPorte v. Barfield, 898 S.W.2d 288, 297
(Tex. 1995)); Anderson, 62 S.W.2d at 110 (holding that when governmental entity files
suit, "the defense will be entitled to plead and prove all matters properly defensive.
This includes the right to make any defense by answer or cross-complaint germane to
the matter in controversy"). The Reata II court noted in its decision that "[a]t the time
Anderson was decided, a claim of an offset was referred to as a defensive matter."
Reata II, 197 S.W.3d at 377 n.3 (citing to Southwest Contract Purchase Corp. v.
McGee, 36 S.W.2d 978, 979 (Tex. 1931), which stated, "[D]efendant in error pleaded
in defense . . . certain offsets and defenses"). This implies that the supreme court did
not intend the term "properly defensive" to restrict jurisdiction for the type of claim
raised, but, rather, to restrict jurisdiction over the amount of a claim for damages
against the governmental entity to the amount that the government actually recovers. 

 Because jurisdictional words are used in the court's holding in Reata II to
describe claims in excess of damages sufficient to offset the governmental entity's
recovery, Sweeny urges this Court "to dismiss Mendez's claims" for tortious
interference, defamation, and retaliation. The supreme court implies in Reata II that
trial courts are deprived of jurisdiction to the extent that a claimant in a suit initiated
by a governmental entity seeks monetary damages in excess of what the governmental
entity may ultimately recover, stating that ". . . the trial court did not acquire
jurisdiction over a claim for damages against [the governmental entity] in excess of
damages sufficient to offset the [governmental entity's] recovery, if any." Reata II, 197
S.W.3d at 377 (emphasis added). But see Wichita Falls State Hosp., 106 S.W.3d at 696
(recognizing that immunity from liability does not affect court's jurisdiction to hear a
case and cannot be raised in a plea to the jurisdiction); Kinnear, 14 S.W.3d at 300
(holding that jurisdictional question in that case was answered when governmental
entity filed suit and that governmental immunity from liability as affirmative defense
was waived because governmental entity never pleaded it; thus, court of appeals erred
in determining attorney's fees award on governmental-immunity ground). 

 We decline Sweeny's request to reverse the order of the trial court and to dismiss
Mendez's claim's for tortious interference, defamation, and retaliation "because they
act far in excess of an offset to the claims initiated by Sweeny." The trial court
properly denied Sweeny's plea to the jurisdiction. If the amount sought by Mendez
truly is a jurisdictional matter, then it is a curable deficiency that can be fixed by
amending the pleading to seek no more damages than the governmental entity may be
awarded upon final trial. See Bybee, 331 S.W.2d at 914; Smith, 69 S.W.3d 303, at 305
(holding that trial court may not grant jurisdictional plea based on pleading deficiency
that can be cured). To the extent the damages pleaded and sought by Mendez implicate
only immunity from liability, that matter is not one determinable by a plea to the
jurisdiction. See Wichita Falls State Hosp., 106 S.W.3d at 696.

 Because Sweeny's assertion of a breach-of-contract claim against Mendez
removes Sweeny from the realm of immunity from suit as to Mendez's claims only to
the limited extent that we have explained above, we must consider Mendez's remaining
arguments to determine if Sweeny's immunity from suit has been completely waived
in some other manner so as to permit Mendez to recover more than offsetting damages
from Sweeny pursuant to the causes of action that he has pleaded. See City of Angleton
v. USFilter Oper. Serv. Inc., 201 S.W.3d 677, 678 (Tex. 2006) (reversing court of
appeals's judgment that governmental entity's counterclaim operated as complete
waiver of immunity); Reata II, 197 S.W. 3d at 373. 


Section 161.135 of the Texas Health and Safety Code


 Mendez has pleaded that Sweeny retaliated against him in violation of section
161.135 of the Texas Health and Safety Code. With regard to Mendez's retaliation
claim, Sweeny contends that the Legislature did not manifest a clear legislative intent
to waive its governmental immunity to a retaliation claim by enacting section 161.135
of the Health and Safety Code.

A. The Law

 Legislative consent for suit or any other sovereign-immunity waiver must be
"effected by clear and unambiguous language." Tex. Gov't Code Ann. § 311.034
(Vernon Supp. 2006); Travis County v. Pelzel & Assocs., Inc., 77 S.W.3d 246, 248
(Tex. 2002); Fed. Sign v. Tex. S. Univ., 951 S.W.2d 401, 405 (Tex. 1997). In
determining whether the Legislature clearly and unambiguously waived sovereign
immunity from suit, we look at the four aids that the supreme court identified in 
Wichita Falls State Hospital v. Taylor:

 First, a statute that waives the State's immunity must do so
beyond doubt, even though we do not insist that the statute
be a model of "perfect clarity." . . . For example, we have
found waiver when the provision in question would be
meaningless unless immunity were waived. . . .


 Second, when construing a statute that purportedly waives
sovereign immunity, we generally resolve ambiguities by
retaining immunity. . . .


 Third, if the Legislature requires that the State be joined in
a lawsuit for which immunity would otherwise attach, the
Legislature has intentionally waived the State's sovereign
immunity. . . .


 Finally, we are cognizant that, when waiving immunity by
explicit language, the Legislature often enacts simultaneous
measures to insulate public resources from the reach of
judgment creditors. . . . Therefore, when deciding whether
the Legislature intended to waive sovereign immunity and
permit monetary damages against the State, one factor to
consider is whether the statute also provides an objective
limitation on the State's potential liability. . . .


Id., 106 S.W.3d at 697-98.

 

 Section 161.135 provides in part:

 (a) A hospital, mental health facility, or treatment facility
may not retaliate against a person who is not an employee
for reporting a violation of law, including a violation of this
chapter, a rule adopted under this chapter, or a rule adopted
by the Texas Board of Mental Health and Mental
Retardation, the Texas Board of Health, or the Texas
Commission on Alcohol and Drug Abuse.



 (b) A hospital, mental health facility, or treatment facility
that violates Subsection (a) is liable to the person retaliated
against. A person who has been retaliated against in
violation of Subsection (a) may sue for injunctive relief,
damages, or both. 


Tex. Health & Safety Code Ann. § 161.135(a), (b) (Vernon 2001) (emphasis
added). The relevant definition section for this subchapter is Texas Health and Safety
Code section 161.131 which incorporates by reference the definition of "hospital"
contained in Texas Health and Safety Code section 241.003. Id. § 161.131(3) (Vernon
2001). The term hospital includes a "general hospital" and a "special hospital." Id. §
241.003(7) (Vernon Supp. 2006). "General hospital" is defined as an establishment
that

 (A) offers services, facilities, and beds for use for more than
24 hours for two or more unrelated individuals requiring
diagnosis, treatment, or care for illness, injury, deformity,
abnormality, or pregnancy; and



 (B) regularly maintains, at a minimum, clinical laboratory
services, diagnostic X-ray services, treatment facilities
including surgery or obstetrical care or both, and other
definitive medical or surgical treatment of similar extent.


Id. § 241.003(5) (Vernon Supp. 2006). 

"Special hospital" is defined as an establishment that

 (A) offers services, facilities, and beds for use for more than
24 hours for two or more unrelated individuals who are
regularly admitted, treated, and discharged and who require
services more intensive than room, board, personal services,
and general nursing care;


 (B) has clinical laboratory facilities, diagnostic X-ray
facilities, treatment facilities, or other definitive medical
treatment;


 (C) has a medical staff in regular attendance; and


 (D) maintains records of the clinical work performed for
each patient. 


Id. § 241.003(15) (Vernon Supp. 2006). 

B. Analysis

 Sweeny relies on Center for Health Care Service v. Quintanilla, 121 S.W.3d 733
(Tex. 2003), to argue that the Legislature did not manifest a clear legislative intent to
waive its governmental immunity by enacting section 161.135 of the Texas Health and
Safety Code. We agree. 

 In Quintanilla, the employee of a governmental mental health facility alleged
violations of section 161.134 of the Health and Safety Code and the Texas
Whistleblower Act. Id. at 734; see Tex. Health & Safety Code Ann. § 161.134
(Vernon 2001); Tex. Gov't Code Ann. § 554.002 (Vernon 2004). Chapter 161
incorporates by reference the definition of "mental health facility" contained in Texas
Health and Safety Code section 571.003. See Tex. Health & Safety Code Ann. §
161.131(7) (Vernon 2001); id. § 571.003(12) (defining "mental health facility" as "an
inpatient or outpatient mental health facility operated by the department, a federal
agency, a political subdivision, or any person; a community center or a facility operated
by a community center; or that identifiable part of a general hospital in which
diagnosis, treatment, and care for persons with mental illness is provided"). 
Nevertheless, the supreme court in Quintanilla held that "mere incorporation of section
571.003's definition of 'mental health facility,' which includes public facilities, into
Chapter 161 did not by itself manifest a clear legislative intent to waive immunity." 
Quintanilla, 121 S.W.3d at 735. The same reasoning applies here. 

 Here, section 241.003's definition of "hospital," incorporated by reference in
section 161.131 of the Texas Health and Safety Code, does not include public facilities
in its definition. Indeed, chapter 241 defines "governmental unit" separately and also
provides that the requirements of chapter 241 do not apply to facilities maintained or
operated by the State or by an agency of the State. See Tex. Health & Safety Code
Ann. § 241.003(6) (Vernon Supp. 2006) (defining "governmental unit" as "a political
subdivision of the state, including a hospital district, county, or municipality, and any
department, division, board, or other agency of a political subdivision"); id § 241.004
(Vernon Supp. 2006) (exempting facilities licensed under chapter 242 (nursing homes)
or chapter 577 (mental health facilities) of Texas Health and Safety Code; maintained
or operated by federal government or agency of federal government; or maintained or
operated by the State or agency of State). We hold that the Legislature did not manifest
a clear legislative intent to waive the governmental immunity of governmental entities
for retaliation claims brought under section 161.135 of the Texas Health and Safety
Code.

 Accordingly, Mendez may sue Sweeny for damages for retaliation only to the
extent of the limited immunity to suit set out in Reata II, i.e., only to the extent of an
offset. See Reata II, 197 S.W.3d at 373.

TTCA


 Sweeny argues that it is "immune from both suit and liability for any alleged
personal injury or death, unless the [TTCA's] limited waiver of [governmental]
immunity would allow [Mendez] to bring his claim." 

 

 Sweeny is correct that the TTCA does not waive immunity for intentional torts. 
 See Tex. Civ. Prac. & Rem. Code Ann. § 101.056 (Vernon 2005). However,
Mendez states in his supplemental brief on appeal, "Here the waiver of sovereign
immunity is based on Sweeny's filing a lawsuit against [Mendez], not the TTCA." See
Wichita Falls State Hosp., 106 S.W.3d at 696 n.5. Mendez does not argue that the
TTCA waives Sweeny's immunity from suit. Sweeny's argument that the TTCA does
not waive immunity for intentional torts is thus inapposite to Mendez's argument that
Sweeny's decision to file a suit for breach of contract encompassed a decision to leave
its sphere of immunity from suit. See Reata II, 197 S.W.3d at 373.

 Accordingly, Mendez may sue Sweeny for damages for tortious interference and
defamation only to the extent of the limited immunity from suit set out in Reata II, i.e.,
only to the extent of an offset. See id.

"Sue and be Sued"


 Sweeny argues that the "sue and be sued" language in the enabling statute did
not waive its immunity from suit.

 In his supplemental brief, Mendez concedes on appeal that, following the
supreme court's decision in Tooke v. City of Mexia, (12)
 the "sue and be sued" language
in the enabling statute does not waive Sweeney's immunity from suit for tortious
interference, defamation, or retaliation. See Tooke v. City of Mexia, 197 S.W.3d 325,
328-31 (Tex. 2006). Although we agree with Sweeny that the "sue and be sued"
language in the enabling statute that created Sweeny did not waive immunity from suit,
our disposition remains the same based on Reata II.

 We overrule Sweeny's points of error one and two.

Conclusion

 We affirm the order of the trial court. 

 

 

 

 Tim Taft

 Justice


Panel consists of Justices Taft, Keyes, and Hanks.
1. A party may appeal the interlocutory order of a trial court that grants or denies
a plea to the jurisdiction by a governmental unit. Tex. Civ. Prac. & Rem.
Code Ann. § 51.014(a)(8) (Vernon Supp. 2006).
2. Tex. Health & Safety Code Ann. § 161.135 (Vernon 2001).
3. Id. §§ 101.001-.109 (Vernon 2005). 
4. Tex. Health & Safety Code Ann. §§ 161.134, .135 (Vernon 2001); Tex.
Gov't Code Ann. § 554.002 (Vernon 2004).
5. In its plea to the jurisdiction, Sweeny argued that it did not waive immunity
under either section 161.134 or 161.135 of the Health and Safety Code. The
parties stipulated to a dismissal of the claim for retaliation under section
161.134 of the Health and Safety Code, which protects employees, because
Mendez affirmatively stated that he was not an employee. 
6. In its plea to the jurisdiction, Sweeny argued that it did not waive immunity
under either section 161.134 or 161.135 of the Health and Safety Code. As
noted above, the parties stipulated to a dismissal of the claim for retaliation
under section 161.134 of the Health and Safety Code and that issue is not
before the Court. 
7. We recognize that sovereign immunity and governmental immunity, although
frequently used interchangeably, are two different concepts. See Wichita Falls
State Hosp. v. Taylor, 106 S.W.3d 692, 694 n.3 (Tex. 2003). "Sovereign
immunity refers to the State's immunity from suit and liability" and applies to
"the various divisions of state government, including agencies, boards,
hospitals, and universities." Id. "Governmental immunity, on the other hand,
protects subdivisions of the State, including counties, cities, and school
districts." Id. 
8. Anderson, Clayton & Co. v. State ex rel. Allred, 62 S.W.2d 107, 110 (Tex.
1933).
9. State v. Humble Oil & Ref. Co., 169 S.W.2d 707, 708 (Tex. 1943).
10. Kinnear v. Tex. Comm'n on Human Rights ex rel. Hale, 14 S.W.3d 299, 300
(Tex. 2000).
11. Sweeny alleged in its petition that it had "fully performed" its obligations
under the contract.
12. In Tooke, a contractor who provided curbside collection of brush and leaves
sued the City of Mexia for breach of contract. Tooke v. City of Mexia, 197
S.W.3d 325, 328-31 (Tex. 2006). The trial court rendered judgment on a
verdict for the contractor. Id. at 329. The court of appeals reversed, holding
that the City was immune from suit. Id. The appeals court held that the City's
governmental immunity from suit was not waived by section 51.075 of the
Texas Local Government Code, which provides that a home-rule municipality
"'may plead and be impleaded in any court.'" Id. (quoting Tex. Loc. Gov't
Code Ann. § 51.075 (Vernon 1999)). The supreme court agreed, holding that
"plead and be impleaded" and "sue and be sued," when used in an organic
statute, do not alone waive governmental immunity. Id. at 342. The supreme
court expressly overruled Missouri Pacific Railroad Co. v. Brownsville
Navigation District, 453 S.W.2d 812 (Tex. 1970), noting that the phrase "sue
and be sued" means "different things in different statutes" and had been
variously interpreted by courts, thus concluding that it "cannot be said to be
clear and unambiguous[,]" as a legislative waiver of immunity must be. Id.