**SWEENY COMMUNITY HOSPITAL,**
Appellant

v.

**Rodolfo MENDEZ, M.D., Appellee.**

**No. 01–06–00069–CV.**

Court of Appeals of Texas,
Houston (1st Dist.).

Feb. 1, 2007.

James B. Edwards, for Sweeny Community Hospital.

G. Scott Fiddler and Robert L. Leboeuf, for Rodolfo Mendez M.D.

Panel consists of Justices TAFT, KEYES, and HANKS.

## OPINION

TIM TAFT, Justice.

Appellant, Sweeny Community Hospital ("Sweeny"), sued appellee, Rodolfo Mendez, M.D., for breach of contract. Mendez countersued for breach of contract, fraud, tortious interference, defamation, and retaliation. Sweeny filed a plea to the jurisdiction contending that it was immune from suit for tortious interference, defamation, and retaliation. The trial court denied the plea to the jurisdiction, from which ruling Sweeny appeals.[1] We determine whether the trial court erred by denying the plea to the jurisdiction because Sweeny's governmental immunity from suit (1) for tortious interference, defamation, and retaliation was not waived by its affirmative claim for relief of breach of contract; (2) for retaliation was not waived by section 161.135 of the Health and Safety Code;[2] and (3) for tortious interference and defamation was not waived by the Texas Tort Claims Act[3] ("TTCA"). We affirm the order of the trial court.

### Facts

On August 9, 1996, Mendez and Sweeny executed a written contract ("the contract"). Mendez agreed to establish a full-time medical practice in Sweeny, Texas, for 24 months, beginning September 30, 1996. Sweeny agreed to subsidize Mendez's net income to ensure Mendez a monthly income of $16,666.66. The contract provided that it could be terminated upon the happening of any of the following events: (1) Mendez's medical license was suspended or revoked by the State of Texas, (2) Mendez's medical staff privileges at Sweeny were terminated in accordance

---

1. A party may appeal the interlocutory order of a trial court that grants or denies a plea to the jurisdiction by a governmental unit. TEX. CIV. PRAC. & REM.CODE ANN. § 51.014(a)(8) (Vernon Supp.2006).

2. TEX. HEALTH & SAFETY CODE ANN. § 161.135 (Vernon 2001).

3. Id. §§ 101.001–.109 (Vernon 2005).

with Sweeny's medical staff by-laws, (3) Mendez's professional liability insurance was canceled, (4) Mendez's application for medical staff at Sweeny was denied for whatever reason, (5) Mendez or Sweeny materially breached the contract, (6) death or long-term disability of Mendez occurred, or (7) Sweeny and Mendez mutually consented in writing to terminate the contract prior to the end of the 24–month term. The contract provided that if the contract was terminated for any of the above reasons, except for material breach of the contract by Sweeny or long-term disability of Mendez, Mendez would be required to repay Sweeny within 12 months the sum of all unreimbursed subsidy advances paid on Mendez's behalf, with interest from the date that the agreement was terminated. The contract also provided that Mendez could elect to terminate his obligations upon the failure of Sweeny to meet any of its obligations. On January 13, 1998, Mendez gave Sweeny notice of termination. On January 20, 1998, Sweeny gave written consent to the termination, effective February 18, 1998.

On September 24, 1999, Sweeny filed a breach-of-contract lawsuit against Mendez. In its petition, Sweeny claimed that Mendez owed it $299,760.00 in unreimbursed subsidy advances plus interest at the rate of eight percent per annum. Mendez denied that he had breached the contract and filed counterclaims for (1) breach of contract, (2) fraud, (3) retaliation under section 161.134 of the Health and Safety Code and section 554 of the Government Code jointly, (4) retaliation under section 161.135 of the Health and Safety Code,[4] (5) tortious interference, and (6) defamation. The parties stipulated to a dismissal of Mendez's counterclaims for retaliation under section 161.134 of the Health and Safety Code and section 554 of the Government Code because Mendez was not an employee.[5] Therefore, at the time of the court's ruling, Mendez's retaliation claim was brought solely under section 161.135 of the Health and Safety Code.

In his petition, Mendez alleged that he became aware of serious deficiencies and violations of laws and regulations by Sweeny. When Sweeny refused to remedy those deficiencies, Mendez stopped referring and admitting patients to Sweeny and reported it to outside governmental agencies. Mendez alleged in his petition that Sweeny retaliated against him by "not paying his monthly subsidy on time, contesting reasonable expenses in his monthly reports, bringing false charges against him to attempt to have his credentials revoked at the hospital and destroy his reputation as a physician, breaching the lease he had with Sweeny for office space, trespassing into his office and home and taking his property, and undermining his medical practice." Mendez claimed that as a result of Sweeny's breach of contract, he was forced to terminate the contract, to close his practice, and to look elsewhere for work. Mendez also claimed that Sweeny continued its retaliation after Mendez's termination by "interfering, and continuing to interfere, with his attempts to find subsequent employment. Such interference included acts of defamation, all of which interfered with and resulted in the loss of

---

**4.** TEX. HEALTH & SAFETY CODE ANN. §§ 161.134, .135 (Vernon 2001); TEX. GOV'T CODE ANN. § 554.002 (Vernon 2004).

**5.** In its plea to the jurisdiction, Sweeny argued that it did not waive immunity under either section 161.134 or 161.135 of the Health and Safety Code. The parties stipulated to a dismissal of the claim for retaliation under section 161.134 of the Health and Safety Code, which protects employees, because Mendez affirmatively stated that he was not an employee.

two separate work opportunities with hospitals."

On September 20, 2005, Sweeny filed a "Motion To Dismiss For Lack Of Jurisdiction," contending that it was immune from suit for tortious interference, defamation, and retaliation.[6] The trial court denied Sweeny's plea to the jurisdiction on December 27, 2005.

## Standard and Scope of Review

Subject-matter jurisdiction is essential for a court to have the authority to resolve a case, and trial courts lack such jurisdiction over a governmental unit that is immune from suit. *Tex. Ass'n of Bus. v. Tex. Air Control Bd.,* 852 S.W.2d 440, 443 (Tex.1993). A party may challenge a court's subject-matter jurisdiction by filing a plea to the jurisdiction. *See Tex. Dep't of Transp. v. Jones,* 8 S.W.3d 636, 638–39 (Tex.1999). We review the trial court's ruling on such a plea de novo because jurisdiction is a question of law. *Mayhew v. Town of Sunnyvale,* 964 S.W.2d 922, 928 (Tex.1998). In conducting this de novo review, we do not examine the underlying merit of the plaintiff's case, but consider only the plaintiff's pleadings and the evidence pertinent to the jurisdictional inquiry. *County of Cameron v. Brown,* 80 S.W.3d 549, 555 (Tex.2002). We construe the pleadings liberally in favor of conferring jurisdiction. *Tex. Dep't of Transp. v. Ramirez,* 74 S.W.3d 864, 867 (Tex.2002); *Tex. Ass'n of Bus.,* 852 S.W.2d at 446.

The plaintiff bears the burden to allege facts affirmatively demonstrating the trial court's jurisdiction to hear the case. *Dallas Area Rapid Transit v. Whitley,* 104 S.W.3d 540, 542 (Tex.2003); *Tex. Ass'n of Bus.,* 852 S.W.2d at 446. Because a governmental unit is protected from suit by governmental immunity, pleadings in a suit against a governmental unit must affirmatively demonstrate, either by reference to a statute or express legislative permission, that the Legislature consented to the suit. *Jones,* 8 S.W.3d at 638. Absent the government's consent to suit, the trial court has no jurisdiction over the cause of action. *Id.* To prevail on a plea to the jurisdiction, the defendant must show an incurable jurisdictional defect apparent from the face of the pleadings, making it impossible for any amendment of the plaintiff's petition to confer jurisdiction on the trial court. *Bybee v. Fireman's Fund Ins. Co.,* 160 Tex. 429, 331 S.W.2d 910, 914 (1960); *City of San Angelo v. Smith,* 69 S.W.3d 303, 305 (Tex.App.-Austin 2002, pet. denied).

## Governmental Immunity[7]

In Texas, governmental immunity deprives a trial court of subject-matter jurisdiction for lawsuits in which governmental entities have been sued unless the governmental entities consent to suit. *Tex. Dep't of Parks & Wildlife v. Miranda,* 133 S.W.3d 217, 224 (Tex.2004). Governmental immunity includes two dis-

---

6. In its plea to the jurisdiction, Sweeny argued that it did not waive immunity under either section 161.134 or 161.135 of the Health and Safety Code. As noted above, the parties stipulated to a dismissal of the claim for retaliation under section 161.134 of the Health and Safety Code and that issue is not before the Court.

7. We recognize that sovereign immunity and governmental immunity, although frequently used interchangeably, are two different concepts. *See Wichita Falls State Hosp. v. Taylor,* 106 S.W.3d 692, 694 n. 3 (Tex.2003). "Sovereign immunity refers to the State's immunity from suit and liability" and applies to "the various divisions of state government, including agencies, boards, hospitals, and universities." *Id.* "Governmental immunity, on the other hand, protects subdivisions of the State, including counties, cities, and school districts." *Id.*

tinct principles: immunity from suit and immunity from liability. *Id.* Immunity from liability is an affirmative defense, while immunity from suit deprives a court of subject-matter jurisdiction. *Id.* Immunity from suit bars a suit against the State unless the Legislature expressly consents to the suit. *Tex. Natural Res. Conservation Comm'n v. IT–Davy*, 74 S.W.3d 849, 853 (Tex.2002). If the Legislature has not expressly waived immunity from suit, the State retains immunity even if its liability is not disputed. *Id.* Immunity from liability protects the State from money judgments even if the Legislature has expressly given consent to sue. *Id.*

Sweeny is a political subdivision of the State of Texas. *See* Tex. Const. art. IX, §§ 4–11 (providing for the creation of hospital districts); Tex. Civ. Prac. & Rem.Code § 101.001(3) (Vernon 2005); Tex.Rev.Civ. Stat. Ann. art. 4494q (Vernon Supp.2006) (listing hospital districts); Act of April 30, 1963, 1968, 58th Leg., R.S., ch. 135, § 16, 1963 Tex. Gen. Laws 361, 366 (the "enabling statute") (creating Sweeny Hospital District). Accordingly, governmental immunity deprives the trial court of subject-matter jurisdiction for Mendez's lawsuit against Sweeny unless immunity has been waived or Mendez's claims do not implicate immunity from suit in the first instance. *Miranda,* 133 S.W.3d at 224; *Wichita Falls State Hosp. v. Taylor,* 106 S.W.3d 692, 694 n. 3 (Tex.2003).

In its first and second points of error, Sweeny argues that its immunity from suit was not waived (1) for tortious interference, defamation, and retaliation by its affirmative claim for relief under breach of contract; (2) for retaliation by section 161.135 of the Health and Safety Code; (3) for tortious interference and defamation by the TTCA; or (4) for tortious interference, defamation, and retaliation by the

"sue and be sued" language in its enabling statute.

### Sweeny's Affirmative Claim for Relief

Sweeny argues that Mendez's counterclaims for tortious interference, defamation, and retaliation do not fall within the scope of any waiver of immunity from suit resulting from Sweeney's suit for breach of contract. Specifically, Sweeny argues that Mendez's claims for tortious interference, defamation, and retaliation are not germane to, connected with, and properly defensive to Sweeny's breach-of-contract claim.

### A. The Law

#### 1. *Reata I and Reata II*

In its second opinion in *Reata Construction Corp. v. City of Dallas,* the supreme court held that a governmental entity that brings suit against a private entity does not have immunity as to the private entity's claims that are "germane to, connected with, and properly defensive to the [governmental entity]'s claims, to the extent [the private entity]'s claims offset those asserted by the [governmental entity]." *Id.,* 197 S.W.3d 371, 378 (Tex.2006) ("*Reata II* "). In contrast, in *Reata I,* the supreme court had previously held, " '[B]y filing a suit for damages, a governmental entity waives immunity from suit for any claim that is *incident to, connected with, arises out of, or is germane to* the suit or controversy brought by the State.' " *Ray Ferguson Interests v. Harris County Sports & Convention Corp.,* 169 S.W.3d 18, 23 (Tex.App.-Houston [1st Dist.] 2004, no pet.) (quoting *Reata I,* No. 02–1031, 2004 WL 726906, at *3 (Tex. Apr.2, 2004) (per curiam)) (emphasis in original). Thus, *Reata II* modified the test of *Reata I.* Because "germane to" and "connected with" are common to both opinions, the material differences between the two opin-

ions are as follows: "properly defensive to" and the conjunction "and" in *Reata II,* versus "incident to," "arises out of," and the conjunction "or" in *Reata I.*

In *Reata II,* the supreme court explained:

> [T]he decision by the [governmental entity] to file suit for damages encompassed a decision to leave its sphere of immunity from suit for claims against it which are *germane to, connected with and properly defensive to* claims the [governmental entity] asserts.

*Reata II,* 197 S.W.3d at 377 (emphasis added). The supreme court noted that, generally, a lack of immunity hampers governmental functions by requiring tax resources to be used for defending lawsuits and for paying judgments, rather than for their intended purposes. *Id.* at 375. The supreme court reasoned, however, that "if the governmental entity interjects itself into or chooses to engage in litigation to assert affirmative claims for monetary damages, the entity will presumably have made a decision to expend resources to pay litigation costs." *Id.* Thus, "a determination that a governmental entity's immunity from suit does not extend to a situation where the entity has filed suit is consistent with the policy issues involved with immunity." *Id.* The supreme court concluded, "If the opposing party's claims can operate only as an offset to reduce the government's recovery, no tax resources will be called upon to pay a judgment, and the fiscal planning of the governmental entity should not be disrupted." *Id.* "[I]t would be fundamentally unfair to allow a governmental entity to assert affirmative claims against a party while claiming it

had immunity as to the party's claims against it." *Id.* at 375–76.

## 2. Authority on Which the *Reata II* Court Relied

In *Reata II,* the supreme court relied on *Anderson, Clayton & Co. v. State ex rel. Allred,*[8] *State v. Humble Oil & Refining Co.,*[9] and *Kinnear v. Texas Commission on Human Rights ex rel. Hale*[10] to hold that a governmental entity does not enjoy immunity from suit in the first instance for claims against it that are germane to, connected with, and properly defensive to claims that the governmental entity asserts. *See Reata II,* 197 S.W.3d at 376–77.

In *Anderson, Clayton & Co.,* the governmental entity sought penalties from and a temporary injunction against a company for statutory violations. *Id.,* 122 Tex. 530, 62 S.W.2d 107, 107 (1933). The company in turn counterclaimed, seeking an injunction against the governmental entity. *Id.* at 107–08. In noting the general rule that the governmental entity was immune from suit, the supreme court stated that "where a state voluntarily files a suit and submits its rights for judicial determination, it will be bound thereby, and the defense will be entitled to plead and prove all matters properly defensive. This includes the right to make any defense by answer or cross-complaint germane to the matter in controversy." *Id.* at 110.

In *Humble Oil & Refining Co.,* the governmental entity sued an oil company to recover taxes, and the company claimed an offset for overpayment of taxes in the previous year. *Id.,* 141 Tex. 40, 169 S.W.2d 707, 710 (1943). Because the offset claim was for taxes owed for a different taxing period, the supreme court reasoned that

---

**8.** *Anderson, Clayton & Co. v. State ex rel. Allred,* 122 Tex. 530, 62 S.W.2d 107, 110 (1933).

**9.** *State v. Humble Oil & Ref. Co.,* 141 Tex. 40, 169 S.W.2d 707, 708 (1943).

**10.** *Kinnear v. Tex. Comm'n on Human Rights ex rel. Hale,* 14 S.W.3d 299, 300 (Tex.2000).

the offset claim had "no connection with [governmental entity's claim for taxes], and the two claims [were] entirely independent of each other." *Id.* The supreme court announced that the rule stated in *Anderson, Clayton & Co.* did not apply. *Id.* at 709–10.

In *Kinnear*, a governmental entity sued an individual for violating the Texas Fair Housing Act. *Id.,* 14 S.W.3d 299, 300 (Tex. 2000). The individual defendant filed a claim against the governmental entity for attorney's fees pursuant to the same statute. *Id.* The trial court held that "[b]ecause the [governmental entity] initiated this proceeding under the Texas Fair Housing Act, and [the individual defendant] claimed attorney fees as a consequence of that suit, the jurisdictional question in this case [*i.e.,* immunity from suit] was answered when the [governmental entity] filed suit. . . ." *Id.*

### 3. Authority on Which Mendez Relies

Mendez argues that his reliance on *State v. Precision Solar Controls, Inc.* is proper and dispositive of this issue. *Id.,* 188 S.W.3d 364, 372 (Tex.App.-Austin 2006, pet. denied). Under facts similar to those here, our sister court held that, by suing for breach of contract, breach of warranty, and quatum meruit, the governmental entity "waived" immunity from suit against a manufacturer's intentional-tort counterclaim for business disparagement. *Id.* The *Precision Solar Controls, Inc.* court reasoned that "[a]lthough the elements of the claims differ, the core facts are the same, and the issues . . . are necessary to the claims asserted by both the State and [the manufacturer]. If [the manufacturer] were not to bring this counterclaim now and attempt to raise it later, [governmental] immunity issues aside, factual determinations made in this proceeding about the quality of the signals and whether [the

manufacturer] breached any contracts or warranties would be res judicata on [the manufacturer's] later claim for business disparagement." *Id.*

This Court likewise has held that by asserting compulsory counterclaims in response to a suit brought by a company, the governmental entity waived immunity from suit for the company's claims for the intentional torts of fraud and conspiracy because they were "germane to the matter in controversy." *Ray Ferguson Interests,* 169 S.W.3d at 26–27. However, both appellate courts decided the appeals based on *Reata I, i.e.,* before the Texas Supreme Court withdrew its opinion on rehearing and altered the key language on which the *Ray Ferguson Interests* and *Precision Solar Controls, Inc.* courts relied.

### B. Analysis

Sweeny concedes that it enjoys no immunity from suit for Mendez's counterclaims for breach of contract and fraud, and in any event, Sweeny did not seek dismissal of those claims, so that no ruling concerning them is before us. We now determine whether Mendez's counterclaims for tortious interference, defamation, and retaliation are germane to, connected with, and properly defensive to Sweeny's breach-of-contract claim.

Sweeny contends that Mendez's counterclaims cannot be considered germane to, connected with, and properly defensive to Sweeny's claim because "there are no common findings required between Sweeny's breach of contract action and Mendez'[s] counter-claims for [tortious interference, defamation] and retaliation" and because "some of the alleged activity [of Mendez's counterclaims] occurred outside the period of the contract at issue." Sweeny also contends that "because *Reata [II]* held that negligence claims on both sides were 'germane to, connected with, and properly

defensive' Sweeny has not waived its immunity to Mendez['s] intentional tort and retaliation claims by initiating a breach of contract suit." We construe this portion of Sweeny's argument to be that Mendez's counterclaims are of a different nature and arise from a different body of law and facts from Sweeny's claims and thus cannot be considered germane to, connected with, and properly defensive to Sweeny's claims.

Sweeny is correct that tortious interference, defamation, and retaliation do not mirror the breach-of-contract claim that it brought against Mendez. However, we disagree that it is necessary for Mendez's counterclaims to mirror the cause of action brought by Sweeny. We view *Reata II* as having two dimensions of analysis: first, the party's claim must be sufficiently related to the governmental unit's affirmative claim for relief, and second, the party's amount of a claim for damages against the governmental entity is restricted to the amount that the governmental entity will actually recover.

### 1. Germane To and Connected With

■ In common usage, the term "germane" means "closely akin," "being at once relevant and appropriate," "closely or significantly related," "relevant," and "pertinent." *See City of Dallas v. Redbird Dev. Co.*, 143 S.W.3d 375, 381 (Tex.App.-Dallas 2004, no pet.); MERRIAM–WEBSTER'S COLLEGIATE DICTIONARY 525 (11th ed.2003); RANDOM HOUSE WEBSTER'S UNABRIDGED DICTIONARY 800 (2d ed.2001). This Court and its sister court have concluded that the term "germane"—both in its general meaning and as used in the "incident to, connected with, arises out of, or is germane to" holding from *Reata I*—is not narrower in scope than the test for a compulsory counterclaim. *Ray Ferguson Interests*, 169 S.W.3d 18, at 24; *Redbird Dev. Co.*, 143 S.W.3d at 383. Rule 97 of the Texas Rules

of Civil Procedure requires parties to assert any counterclaim "not the subject of a pending action, which at the time of filing ... the pleader has against any opposing party, *if it arises out of the transaction or occurrence that is the subject matter of the opposing party's claim*" and does not require the presence of third parties over whom the trial court could not exercise jurisdiction. TEX.R. CIV. P. 97(a) ("Compulsory Counterclaims") (emphasis added). Consequently, "[a] compulsory counterclaim is germane to the opponent's claim by its very nature." *Redbird Dev. Co.*, 143 S.W.3d at 383.

In common usage, the term "connected" means "united, joined or linked" and "joined together in sequence; linked coherently" and "having parts or elements logically linked together." MERRIAM–WEBSTER'S COLLEGIATE DICTIONARY 525 (11th ed.2003); RANDOM HOUSE WEBSTER'S UNABRIDGED DICTIONARY 800 (2d ed.2001).

■ Here, Sweeny—not Mendez—initiated suit to recover for breach of contract. Mendez thereafter filed counterclaims for breach of contract, fraud, tortious interference, defamation, and retaliation. Sweeny's claim and Mendez's claims arise from the same transaction: the breach of the contract and the fulfillment or non-fulfillment of obligations by the parties under that contract. Resolution of the rights of the parties depends on facts pertinent to Sweeny's conduct regarding that breach, and the added claims are thus germane to the matter in controversy. *See Ray Ferguson Interests*, 169 S.W.3d 18 at 24; *Redbird Dev. Co.*, 143 S.W.3d at 383.

To succeed on its claim for breach of contract, Sweeny will have to show that Mendez did not perform his obligations under the contract and that Sweeny per-

formed its obligations under the contract.[11] Mendez's claim for retaliation will in part require contrary findings that Sweeny did not meet its obligation because it failed to pay Mendez the monthly subsidy on time, contested reasonable expenses in Mendez's monthly reports, breached the lease that Mendez had with Sweeny, and attempted to have Mendez's credentials revoked. Mendez's claims for tortious interference and defamation will in part require findings that Mendez performed under the contact by satisfying his obligations, thereby making Sweeny's alleged statements to other hospitals of Mendez's breach false. Although the elements of the claims differ, the core facts are the same, and determining whether Sweeny and Mendez met their obligations under the contract is necessary to the claims asserted by both Sweeny and Mendez. Thus, without commenting on the merits of either parties' claims, but based on the face of the pleadings, we hold that the issues that will arise in Mendez's counterclaims are germane to and connected with Sweeny's breach-of-contract claim.

### 2. Properly Defensive To

 Sweeny argues that "any waiver [sic] of immunity to suit should be limited to the extent of [its breach-of-contract] claim." Specifically, Sweeny argues that under *Reata II*, Mendez's claims can operate only as an offset to reduce Sweeny's recovery, reasoning that because Mendez's claims for tortious interference, defamation, and retaliation "carry with them exemplary and punitive damages," this Court should dismiss those claims. Mendez responds that the language "properly defensive to" is not a limit on the type of claim that may be asserted, but, rather, on the amount of damages that can be recovered against a governmental entity.

In *Reata II*, the supreme court reasoned, "Once [the governmental entity] asserts affirmative claims for monetary recovery, the [governmental entity] must participate in the litigation process as an ordinary litigant, save for the limitation that the [governmental entity] continues to have immunity from affirmative damage claims against it for monetary relief exceeding amounts necessary to offset the [governmental entity's] claims." *Reata II*, 197 S.W.3d at 377. The supreme court concluded that "[a]bsent the Legislature's waiver of the [governmental entity's] immunity from suit, however, the trial court [does] not acquire jurisdiction over a claim for damages against [the governmental entity] in excess of damages sufficient to offset the [governmental entity's] recovery, if any." *Id.* (citing *City of LaPorte v. Barfield*, 898 S.W.2d 288, 297 (Tex.1995)); *Anderson*, 62 S.W.2d at 110 (holding that when governmental entity files suit, "the defense will be entitled to plead and prove all matters properly defensive. This includes the right to make any defense by answer or cross-complaint germane to the matter in controversy"). The *Reata II* court noted in its decision that "[a]t the time *Anderson* was decided, a claim of an offset was referred to as a defensive matter." *Reata II*, 197 S.W.3d at 377 n. 3 (citing to *Southwest Contract Purchase Corp. v. McGee*, 120 Tex. 240, 36 S.W.2d 978, 979 (1931), which stated, "[D]efendant in error pleaded in defense ... certain offsets and defenses"). This implies that the supreme court did not intend the term "properly defensive" to restrict jurisdiction for the type of claim raised, but, rather, to restrict jurisdiction over the amount of a claim for damages against the governmen-

---

11. Sweeny alleged in its petition that it had "fully performed" its obligations under the contract.

tal entity to the amount that the government actually recovers.

Because jurisdictional words are used in the court's holding in *Reata II* to describe claims in excess of damages sufficient to offset the governmental entity's recovery, Sweeny urges this Court "to dismiss Mendez's claims" for tortious interference, defamation, and retaliation. The supreme court implies in *Reata II* that trial courts are deprived of jurisdiction to the extent that a claimant in a suit initiated by a governmental entity seeks monetary damages in excess of what the governmental entity may ultimately recover, stating that "... the trial court did not acquire *jurisdiction* over a *claim for damages* against [the governmental entity] in excess of damages sufficient to offset the [governmental entity's] recovery, if any." *Reata II,* 197 S.W.3d at 377 (emphasis added). *But see Wichita Falls State Hosp.,* 106 S.W.3d at 696 (recognizing that immunity from liability does not affect court's jurisdiction to hear a case and cannot be raised in a plea to the jurisdiction); *Kinnear,* 14 S.W.3d at 300 (holding that jurisdictional question in that case was answered when governmental entity filed suit and that governmental immunity from liability as affirmative defense was waived because governmental entity never pleaded it; thus, court of appeals erred in determining attorney's fees award on governmental-immunity ground).

We decline Sweeny's request to reverse the order of the trial court and to dismiss Mendez's claim's for tortious interference, defamation, and retaliation "because they act far in excess of an offset to the claims initiated by Sweeny." The trial court properly denied Sweeny's plea to the jurisdiction. If the amount sought by Mendez truly is a jurisdictional matter, then it is a curable deficiency that can be fixed by amending the pleading to seek no more damages than the governmental entity may be awarded upon final trial. *See Bybee,* 331 S.W.2d at 914; *Smith,* 69 S.W.3d 303, at 305 (holding that trial court may not grant jurisdictional plea based on pleading deficiency that can be cured). To the extent the damages pleaded and sought by Mendez implicate only immunity from liability, that matter is not one determinable by a plea to the jurisdiction. *See Wichita Falls State Hosp.,* 106 S.W.3d at 696.

Because Sweeny's assertion of a breach-of-contract claim against Mendez removes Sweeny from the realm of immunity from suit as to Mendez's claims only to the limited extent that we have explained above, we must consider Mendez's remaining arguments to determine if Sweeny's immunity from suit has been completely waived in some other manner so as to permit Mendez to recover more than offsetting damages from Sweeny pursuant to the causes of action that he has pleaded. *See City of Angleton v. USFilter Oper. Serv. Inc.,* 201 S.W.3d 677, 678 (Tex.2006) (reversing court of appeals's judgment that governmental entity's counterclaim operated as complete waiver of immunity); *Reata II,* 197 S.W.3d at 373.

### Section 161.135 of the Texas Health and Safety Code

Mendez has pleaded that Sweeny retaliated against him in violation of section 161.135 of the Texas Health and Safety Code. With regard to Mendez's retaliation claim, Sweeny contends that the Legislature did not manifest a clear legislative intent to waive its governmental immunity to a retaliation claim by enacting section 161.135 of the Health and Safety Code.

### A. The Law

Legislative consent for suit or any other sovereign-immunity waiver must be "ef-

fected by clear and unambiguous language." TEX. GOV'T CODE ANN. § 311.034 (Vernon Supp.2006); *Travis County v. Pelzel & Assocs., Inc.,* 77 S.W.3d 246, 248 (Tex.2002); *Fed. Sign v. Tex. S. Univ.,* 951 S.W.2d 401, 405 (Tex.1997). In determining whether the Legislature clearly and unambiguously waived sovereign immunity from suit, we look at the four aids that the supreme court identified in *Wichita Falls State Hospital v. Taylor:*

> First, a statute that waives the State's immunity must do so beyond doubt, even though we do not insist that the statute be a model of "perfect clarity." ... For example, we have found waiver when the provision in question would be meaningless unless immunity were waived....
>
> Second, when construing a statute that purportedly waives sovereign immunity, we generally resolve ambiguities by retaining immunity....
>
> Third, if the Legislature requires that the State be joined in a lawsuit for which immunity would otherwise attach, the Legislature has intentionally waived the State's sovereign immunity....
>
> Finally, we are cognizant that, when waiving immunity by explicit language, the Legislature often enacts simultaneous measures to insulate public resources from the reach of judgment creditors.... Therefore, when deciding whether the Legislature intended to waive sovereign immunity and permit monetary damages against the State, one factor to consider is whether the statute also provides an objective limitation on the State's potential liability....

*Id.,* 106 S.W.3d at 697–98.

Section 161.135 provides in part:

(a) A *hospital,* mental health facility, or treatment facility *may not retaliate against a person who is not an employee for reporting a violation of law,* including a violation of this chapter, a rule adopted under this chapter, or a rule adopted by the Texas Board of Mental Health and Mental Retardation, the Texas Board of Health, or the Texas Commission on Alcohol and Drug Abuse.

(b) A *hospital,* mental health facility, or treatment facility that violates Subsection (a) *is liable* to the person retaliated against. *A person who has been retaliated against* in violation of Subsection (a) *may sue* for injunctive relief, damages, or both.

TEX. HEALTH & SAFETY CODE ANN. § 161.135(a), (b) (Vernon 2001) (emphasis added). The relevant definition section for this subchapter is Texas Health and Safety Code section 161.131 which incorporates by reference the definition of "hospital" contained in Texas Health and Safety Code section 241.003. *Id.* § 161.131(3) (Vernon 2001). The term hospital includes a "general hospital" and a "special hospital." *Id.* § 241.003(7) (Vernon Supp.2006). "General hospital" is defined as an establishment that

(A) offers services, facilities, and beds for use for more than 24 hours for two or more unrelated individuals requiring diagnosis, treatment, or care for illness, injury, deformity, abnormality, or pregnancy; and

(B) regularly maintains, at a minimum, clinical laboratory services, diagnostic X-ray services, treatment facilities including surgery or obstetrical care or both, and other definitive medical or surgical treatment of similar extent.

*Id.* § 241.003(5) (Vernon Supp.2006).

"Special hospital" is defined as an establishment that

(A) offers services, facilities, and beds for use for more than 24 hours for two or more unrelated individuals who are regularly admitted, treated, and dis-

charged and who require services more intensive than room, board, personal services, and general nursing care;

(B) has clinical laboratory facilities, diagnostic X-ray facilities, treatment facilities, or other definitive medical treatment;

(C) has a medical staff in regular attendance; and

(D) maintains records of the clinical work performed for each patient.

*Id.* § 241.003(15) (Vernon Supp.2006).

**B. Analysis**

■■■ Sweeny relies on *Center for Health Care Services v. Quintanilla,* 121 S.W.3d 733 (Tex.2003), to argue that the Legislature did not manifest a clear legislative intent to waive its governmental immunity by enacting section 161.135 of the Texas Health and Safety Code. We agree.

In *Quintanilla,* the employee of a governmental mental health facility alleged violations of section 161.134 of the Health and Safety Code and the Texas Whistleblower Act. *Id.* at 734; *see* TEX. HEALTH & SAFETY CODE ANN. § 161.134 (Vernon 2001); TEX. GOV'T CODE ANN. § 554.002 (Vernon 2004). Chapter 161 incorporates by reference the definition of "mental health facility" contained in Texas Health and Safety Code section 571.003. *See* TEX. HEALTH & SAFETY CODE ANN. § 161.131(7) (Vernon 2001); *id.* § 571.003(12) (defining "mental health facility" as "an inpatient or outpatient mental health facility operated by the department, a federal agency, a political subdivision, or any person; a community center or a facility operated by a community center; or that identifiable part of a general hospital in which diagnosis, treatment, and care for persons with mental illness is provided"). Nevertheless, the supreme court in *Quintanilla* held that "mere incorporation of section 571.003's definition of 'mental health facility,' which

includes public facilities, into Chapter 161 did not by itself manifest a clear legislative intent to waive immunity." *Quintanilla,* 121 S.W.3d at 735. The same reasoning applies here.

Here, section 241.003's definition of "hospital," incorporated by reference in section 161.131 of the Texas Health and Safety Code, does not include public facilities in its definition. Indeed, chapter 241 defines "governmental unit" separately and also provides that the requirements of chapter 241 do not apply to facilities maintained or operated by the State or by an agency of the State. *See* TEX. HEALTH & SAFETY CODE ANN. § 241.003(6) (Vernon Supp.2006) (defining "governmental unit" as "a political subdivision of the state, including a hospital district, county, or municipality, and any department, division, board, or other agency of a political subdivision"); *id* § 241.004 (Vernon Supp.2006) (exempting facilities licensed under chapter 242 (nursing homes) or chapter 577 (mental health facilities) of Texas Health and Safety Code; maintained or operated by federal government or agency of federal government; or maintained or operated by the State or agency of State). We hold that the Legislature did not manifest a clear legislative intent to waive the governmental immunity of governmental entities for retaliation claims brought under section 161.135 of the Texas Health and Safety Code.

Accordingly, Mendez may sue Sweeny for damages for retaliation only to the extent of the limited immunity to suit set out in *Reata II, i.e.,* only to the extent of an offset. *See Reata II,* 197 S.W.3d at 373.

**TTCA**

Sweeny argues that it is "immune from both suit and liability for any alleged personal injury or death, unless the [TTCA's]

limited waiver of [governmental] immunity would allow [Mendez] to bring his claim."

Sweeny is correct that the TTCA does not waive immunity for intentional torts. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 101.056 (Vernon 2005). However, Mendez states in his supplemental brief on appeal, "Here the waiver of sovereign immunity is based on Sweeny's filing a lawsuit against [Mendez], not the TTCA." *See Wichita Falls State Hosp.*, 106 S.W.3d at 696 n. 5. Mendez does not argue that the TTCA waives Sweeny's immunity from suit. Sweeny's argument that the TTCA does not waive immunity for intentional torts is thus inapposite to Mendez's argument that Sweeny's decision to file a suit for breach of contract encompassed a decision to leave its sphere of immunity from suit. *See Reata II*, 197 S.W.3d at 373.

Accordingly, Mendez may sue Sweeny for damages for tortious interference and defamation only to the extent of the limited immunity from suit set out in *Reata II*, *i.e.*, only to the extent of an offset. *See id.*

### "Sue and be Sued"

Sweeny argues that the "sue and be sued" language in the enabling statute did not waive its immunity from suit.

In his supplemental brief, Mendez concedes on appeal that, following the supreme court's decision in *Tooke v. City of Mexia*,[12] the "sue and be sued" language in the enabling statute does not waive Sweeney's immunity from suit for tortious interference, defamation, or retaliation. *See Tooke v. City of Mexia*, 197 S.W.3d 325, 328–31 (Tex.2006). Although we agree with Sweeny that the "sue and be sued" language in the enabling statute that created Sweeny did not waive immunity from suit, our disposition remains the same based on *Reata II*.

We overrule Sweeny's points of error one and two.

### Conclusion

We affirm the order of the trial court.

---

12. In *Tooke,* a contractor who provided curbside collection of brush and leaves sued the City of Mexia for breach of contract. *Tooke v. City of Mexia,* 197 S.W.3d 325, 328–31 (Tex. 2006). The trial court rendered judgment on a verdict for the contractor. *Id.* at 329. The court of appeals reversed, holding that the City was immune from suit. *Id.* The appeals court held that the City's governmental immunity from suit was not waived by section 51.075 of the Texas Local Government Code, which provides that a home-rule municipality " 'may plead and be impleaded in any court.' " *Id.* (quoting TEX. LOC. GOV'T CODE ANN. § 51.075 (Vernon 1999)). The supreme court agreed, holding that "plead and be impleaded" and "sue and be sued," when used in an organic statute, do not alone waive governmental immunity. *Id.* at 342. The supreme court expressly overruled *Missouri Pacific Railroad Co. v. Brownsville Navigation District,* 453 S.W.2d 812 (Tex.1970), noting that the phrase "sue and be sued" means "different things in different statutes" and had been variously interpreted by courts, thus concluding that it "cannot be said to be clear and unambiguous[,]" as a legislative waiver of immunity must be. *Id.*