**Opinion issued August 4, 2015**



In The

# Court of Appeals

For The

# First District of Texas

_____

## NO. 01-14-00664-CV, 01-14-00665-CV, 01-14-00666-CV

_____

## ARCHER GROUP, LLC AND JOHN CHRISTIAN ARCHER II, Appellants

## V.

## CITY OF ANAHUAC, ANAHUAC MUNICIPAL DEVELOPMENT DISTRICT, AND CHAMBERS-LIBERTY COUNTIES NAVIGATION DISTRICT, Appellees

---

On Appeal from the 344th District Court
Chambers County, Texas
Trial Court Case Nos. 26,571, 26,572 & 26,703

---

# O P I N I O N

This is an appeal from the trial court's grant of a plea to the jurisdiction. Appellees, the City of Anahuac ("the City"), the Anahuac Municipal Development District ("AMDD"), and the Chambers-Liberty Counties Navigation District

("CLCND") (collectively, "Anahuac Entities"), sued appellants, Archer Group, LLC and John Christian Archer II (collectively, "Archer"), for losses arising out a development deal. Archer filed counterclaims, and the Anahuac Entities subsequently filed a plea to the jurisdiction. The trial court granted the plea, determining that Archer had not adequately pled a waiver of the Anahuac Entities' governmental immunity. In its sole issue on appeal, Archer argues that the trial court erred in granting the plea to the jurisdiction on its counterclaims.

We reverse and remand.

## Background

In April 2009, the City sought funding support from AMDD and CLCND to develop a marina in Anahuac as part of its recovery efforts in the wake of Hurricane Ike. Through a series of negotiations, the Anahuac Entities became involved with Archer, a consulting firm based in San Antonio, Texas, regarding obtaining federal funds to contribute to building the marina. At one point the Anahuac Entities determined that Archer should work on obtaining the necessary federal grants in exchange for an initial payment of $5,000 from each entity—for a total of $15,000—and an additional payment if the grant was procured.

On August 3, 2009, the City and AMDD each issued a check to Archer for $5,000. On August 5, 2009, Guy Jackson, the mayor of the City, emailed Archer's representative a link to a Baytown Sun news article outlining the Anahuac Entities'

2

plan to hire Archer to obtain a federal grant for the marina project. On August 11, 2009, CLCND made a wire transfer of $5,000 to Archer.

The Anahuac Entities then entered into an "Interlocal Agreement" regarding the funding for the grant application services for the marina project. The City, AMDD, and CLCND were all parties to the Interlocal Agreement, and Archer was listed as the "service provider." The Interlocal Agreement provided that each of the Anahuac Entities would make an initial contribution of $5,000 and would subsequently make an additional joint contribution of $135,000. The Interlocal Agreement further provided that Archer "must, in writing in an addendum to this Agreement, ratify, consent and agree to the terms and conditions of this Agreement, as those terms [a]ffect and concern payments and obligations to [Archer] . . . , before [it] is entitled to any payment of any sums due. . . ."

However, a dispute arose between Archer and the Anahuac Entities, and Archer never signed the addendum required by the Interlocal Agreement.

On July 14, 2011, the City filed suit against Archer, seeking the return of the $5,000 initial payment. It alleged that Archer gained control over the money either by mistake or by fraud and then refused to return it. The City further alleged that Archer "requested someone in the City of Anahuac, Texas to obtain for and transfer to [Archer] the sum of US$5,000 from funds belonging to [the City]." The City stated that the City Council did not authorize the transfer of the funds, that

3

"[t]here was no contract between the City and [Archer] nor any other basis in fact, law or equity entitling [Archer] to the City's funds," and that Archer "did not give value for the City's funds," nor were the funds "evidence of any debt the City might have owed" Archer. The City asserted causes of action for money paid by mistake, money had and received, and civil theft; it sought damages of $100,000 and attorney's fees; and it sought exemplary damages on the basis that Archer's conduct demonstrated fraud, malice, or gross negligence. AMDD and CLCND subsequently filed suits of their own against Archer with identical claims. The trial court consolidated the three suits for purposes of trial, and the cause was set for trial in early 2014.

On April 17, 2014, Archer filed its counter-petition. Archer alleged that, in April 2009, Guy Jackson, the mayor of the City, discussed the possibility of obtaining federal funding for the marina with Archer representatives. Jackson subsequently made a presentation to the CLCND board, proposing that Archer apply for a $2.5 million federal grant in exchange for an initial payment of $15,000. If the grant application were successful, Archer would receive an additional $135,000. Jackson allegedly believed that the Anahuac Entities could share the expense of hiring Archer and enter into the Interlocal Agreement amongst themselves and that Archer would contract with only one entity—the City. Jackson committed to propose the development plan and Interlocal

4

Agreement to the City Council. However, Archer alleged that after Jackson's presentation of this proposal to the City Council it voted to change the Interlocal Agreement. Following some additional e-mails and negotiations, all three Anahuac Entities paid their $5,000 initial contributions to Archer, for a total payment of $15,000. Archer alleged that it then immediately paid these monies to its grant writer and to the Archer representative who spearheaded the negotiations so that they could begin working on obtaining the grant.

Archer further alleged that approximately three weeks after it received the $15,000 payment it informed Jackson that it had begun working to obtain the grant and was spending money on the project. Archer also suggested changes to the Interlocal Agreement, as it believed some provisions of that agreement were illegal. Archer alleged that it unsuccessfully attempted to schedule a meeting "to discuss any issues and to explain to [the Anahuac Entities] why their own Interlocal Agreement should likely be modified to reflect a legal agreement." Archer asserts that it did not hear from any of the Anahuac Entities again until it received CLCND's demand letter seeking the return of the $5,000 payment.

Thus, Archer alleged that it received the $15,000 payment pursuant to an agreement with the Anahuac Entities and that it expended the money for the purposes of the agreement—namely, for applying for a federal grant to develop a marina in Anahuac. Archer alleged causes of action for (1) breach of a written

5

contract as an intended third party beneficiary; (2) breach of an oral contract; (3) breach of duties that arose under both contract and tort law as a result of the parties' dealings; (4) quantum meruit; (5) fraudulent inducement; (6) promissory estoppel or, alternatively, detrimental reliance; and (7) declaratory relief. Archer asserted that it was seeking "monetary relief over $200,000 but not more than $1,000,000." Regarding damages, Archer asserted that "[d]amages are an inadequate remedy for [the Anahuac Entities'] breach of contract because [the governmental entities] should cease their demand for the $15,000 ($5,000 each) paid to Archer Group. Accordingly, [Archer] request[s] specific performance of the contract."

In the alternative, Archer alleged that the Anahuac Entities should be required to pay nominal damages; that the Anahauc Entities were liable for actual damages in the amount of the $15,000 they sought in their petition; that the Anahuac Entities should be held liable for the additional payment of $135,000—or $45,000 per entity—that Archer anticipated receiving pursuant to the agreement; and that the Anahuac Entities should be held liable for "the greater of twice the amount of economic damages, plus any noneconomic damages (up to $750,000) or $200,000 if a cap on the award should exist" as a result of the Entities' breach of contractual and common-law duties.

The Anahuac Entities filed their pleas to the jurisdiction, arguing that the trial court lacked jurisdiction over Archer's counterclaims because Archer had failed to sufficiently plead an affirmative waiver of the Entities' governmental immunity. The Anahuac Entities argued that the subject matter of the Interlocal Agreement arose from their governmental function; that they could not waive their governmental immunity merely by executing a contract or accepting benefits under a contract; and that Archer failed to plead a cause of action that fell under the waiver of immunity for certain contracts set out in Local Government Code chapter 271 or for certain torts as set out in Civil Practice and Remedies Code chapter 101.

Archer responded that *Reata Construction Corp. v. City of Dallas*, 197 S.W.3d 371 (Tex. 2006), provides that when a governmental entity files an affirmative claim for monetary relief, the entity does not have immunity from its opponent's claims that are "germane to, connected to, and properly defensive to" the claims asserted by the governmental entity, to the extent that the opponent's claim offset the amounts claimed by the governmental entity. Archer asserted that it pleaded facts and causes of action that were germane to, connected to, and were properly defensive to the Anahuac Entities' claim against it, as the claims "arose out the same transactions or occurrences" as the subject matter of the Anahuac

Entities' claims. Archer further asserted that its counterclaims were "defensive to the claims of [the Anahuac Entities] and act as a bar against their claims."

The trial court granted the Anahuac Entities' pleas to the jurisdiction and dismissed Archer's counterclaims. This appeal followed.

## Plea to the Jurisdiction

In its sole issue on appeal, Archer argues that the trial court erred in granting the Anahuac Entities' pleas to the jurisdiction.

## A.     Standard of Review

"Governmental immunity is comprised of immunity from both suit and liability." *City of Dallas v. Albert*, 354 S.W.3d 368, 373 (Tex. 2011). "Immunity from liability protects entities from judgments while immunity from suit deprives courts of jurisdiction over suits against entities unless the Legislature has expressly consented." *Id.* A plea to the jurisdiction challenges the trial court's subject-matter jurisdiction to hear the case. *Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 554 (Tex. 2000); *see also Reata Constr. Corp.*, 197 S.W.3d at 374 (holding that sovereign immunity from suit deprives trial court of subject-matter jurisdiction). The existence of subject-matter jurisdiction is a question of law that we review de novo. *State ex rel. State Dep't of Hwys. & Pub. Transp. v. Gonzalez*, 82 S.W.3d 322, 327 (Tex. 2002).

8

The plaintiff bears the burden to plead facts supporting the trial court's jurisdiction over the case. *Dallas Area Rapid Transit v. Whitley*, 104 S.W.3d 540, 542 (Tex. 2003); *Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 446 (Tex. 1993). In deciding a plea to the jurisdiction, a court may not consider the case's merits, but only the plaintiff's pleadings and the evidence pertinent to the jurisdictional inquiry. *Cnty. of Cameron v. Brown*, 80 S.W.3d 549, 555 (Tex. 2002). In reviewing a trial court's ruling on a plea to the jurisdiction, we construe the pleadings liberally in favor of conferring jurisdiction. *Tex. Dep't of Transp. v. Ramirez*, 74 S.W.3d 864, 867 (Tex. 2002); *Harris Cnty. v. Luna-Prudencio*, 294 S.W.3d 690, 696 (Tex. App.—Houston [1st Dist.] 2009, no pet.).

Sovereign immunity and its counterpart for political subdivisions of the State, governmental immunity, exist to protect the State and its political subdivisions from lawsuits and liability for money damages. *Mission Consol. Indep. Sch. Dist. v. Garcia*, 253 S.W.3d 653, 655 (Tex. 2008); *Reata Constr. Corp.*, 197 S.W.3d at 374; *Luna-Prudencio*, 294 S.W.3d at 696. However, in *Reata Construction Corp.*, the Texas Supreme Court also recognized that "if the governmental entity interjects itself into or chooses to engage in litigation to assert affirmative claims for monetary damages, the entity will presumably have made a decision to expend resources to pay litigation costs." 197 S.W.3d at 375. It stated,

> If the opposing party's claims can operate only as an offset to reduce
> the government's recovery, no tax resources will be called upon to

> pay a judgment, and the fiscal planning of the governmental entity should not be disrupted. Therefore, a determination that a governmental entity's immunity from suit does not extend to a situation where the entity has filed suit is consistent with the policy issues involved with immunity. In this situation, we believe it would be fundamentally unfair to allow a governmental entity to assert affirmative claims against a party while claiming it had immunity as to the party's claims against it.

*Id.* at 375–76.

The *Reata Construction Corp.* court concluded that when a governmental entity "has joined into the litigation process by asserting its own affirmative claims for monetary relief," the entity would not suffer undue harm "by allowing adverse parties to assert, as an offset, claims germane to, connected with, and properly defensive to those asserted by the governmental entity." *Id.* at 376–77. Thus, a governmental entity that asserts affirmative claims for monetary relief "must participate in the litigation process as an ordinary litigant, save for the limitation that [it] continues to have immunity from affirmative damage claims against it for monetary relief exceeding amounts necessary to offset [its] claims." *Id.* at 377.

The Texas Supreme Court has stated that claims are "germane to—that is, relevant to—and connected with" a governmental entity's affirmative claims when they are based on the same facts and legal questions. *Albert*, 354 S.W.3d at 375 (holding that police officers' claims against city were germane to and connected with city's claim because they were both based on question of pay for officers' employment); *see also City of New Braunfels v. Carowest Land, Ltd.*, 432 S.W.3d

10

501, 524 (Tex. App.—Dallas 2014, no pet.) ("While the [Texas Supreme Court] has not yet delineated the precise parameters of 'connected with' in this context, claims that share common or related core underlying facts appear to qualify.").

This Court, in turn, has held that the meaning of the term "germane" in this context is "not narrower in scope than the test for a compulsory counterclaim." *Luna-Prudencio*, 294 S.W.3d at 697 (citing *Sweeny Cmty. Hosp. v. Mendez*, 226 S.W.3d 584, 588 (Tex. App.—Houston [1st Dist.] 2007, no pet.)). A counterclaim is compulsory only if: (1) it is within the jurisdiction of the court; (2) it is not at the time of filing the answer the subject of a pending action; (3) the claim is mature and owned by the defendant at the time of filing the answer; (4) it arose out of the same transaction or occurrence that is the subject matter of the opposing party's claim; (5) it is against an opposing party in the same capacity; and (6) it does not require the presence of third parties over whom the trial court cannot acquire jurisdiction. *Id.* (citing TEX. R. CIV. P. 97(a) and *Ingersoll-Rand Co. v. Valero Energy Corp.*, 997 S.W.2d 203, 207 (Tex. 1999) (holding that claim is mature when it has accrued)). "Consequently, a compulsory counterclaim is germane to the opponent's claim by its very nature." *Id.* (quoting *Sweeny Cmty. Hosp.*, 226 S.W.3d at 592).

The Texas Supreme Court has also held that a claim is properly defensive to a governmental entity's claim when a finding in favor of the non-governmental

entity "would at least inferentially rebut" the governmental entity's claim. *Albert*, 354 S.W.3d at 375 (holding that police officers' claims against city were properly defensive to city's claim because "a finding that an officer had been underpaid would at least inferentially rebut the City's claim that the officer had been paid correctly or overpaid for the particular period for which the underpayment was made"). "An inferential rebuttal defense operates to rebut an essential element of the plaintiff's case by proof of other facts." *Dillard v. Tex. Elec. Coop.*, 157 S.W.3d 429, 430 (Tex. 2005); *see also Select Ins. Co. v. Boucher*, 561 S.W.2d 474, 477 (Tex. 1978) ("The basic characteristic of an inferential rebuttal is that it presents a contrary or inconsistent theory from the claim relied upon for recovery.").

Finally, the supreme court has held, in *Reata Construction Corp.*, that even though a trial court acquires subject-matter jurisdiction over claims made against a governmental entity that are connected to, germane to, and properly defensive to the matter on which the entity based its own claim for damages, "[a]bsent the Legislature's waiver of [the entity's] immunity from suit, . . . the trial court did not acquire jurisdiction over a claim for damages against the [entity] in excess of damages sufficient to offset the City's recovery, if any." 197 S.W.3d at 376; *see also Albert*, 354 S.W.3d at 374 (holding that governmental entity has immunity from suit as to "claims for amounts over and above the amount that would offset

12

the City's claim but were nevertheless germane to, connected with, and properly defensive to the [entity's] claims").

**Analysis**

Here, the Anahuac Entities filed suit against Archer seeking the return of the $15,000 initial payment and exemplary damages on the basis that Archer's conduct demonstrated fraud, malice, or gross negligence. They alleged that Archer gained control over the money either by mistake or by fraud and then refused to return it, and they asserted causes of action for money paid by mistake, money had and received, and civil theft.

Archer filed counterclaims against the Anahuac Entities. It alleged that it received the $15,000 payment pursuant to an agreement with the Anahuac Entities and that it expended the money for the purposes of the agreement—namely, for applying for a federal grant to develop a marina in Anahuac. Archer's counter-petition asserted causes of action for breach of a written contract as a third party beneficiary, breach of an oral contract, breach of duties that arose under both contract and tort law as a result of the parties' dealings, quantum meruit, fraudulent inducement, promissory estoppel or detrimental reliance, and declaratory relief. Archer's claims are based on the same occurrences and legal question as the Anahuac Entities' suit—the circumstances of the parties' dealings with each other and the terms of the payment of the $15,000 initial contribution for Archer's grant

writing on behalf of the marina project. Thus, all of Archer's counterclaims are germane to, or relevant to, and connected with a claim of the Anahuac Entities. *See Albert*, 354 S.W.3d at 375 (stating that claims are "germane to–that is, relevant to—and connected with" governmental entity's affirmative claims when they are based on the same facts and legal questions); *Reata Constr. Corp.*, 197 S.W.3d at 377.

Furthermore, Archer's counterclaims satisfy the criteria for compulsory counterclaims and are thus necessarily germane. *See Luna-Prudencio*, 294 S.W.3d at 697 (holding that meaning of "germane to" is "not narrower in scope than the test for a compulsory counterclaim," discussing elements of compulsory counterclaim, and stating that "[c]ompulsory counterclaim is germane to the opponents claim by its very nature"). As discussed above, Archer's counterclaims arose out of the same transaction or occurrence that is the subject of the Anahuac Entities' claims. Archer's claims fall within the jurisdiction of the trial court, notwithstanding the immunity issue, and Archer had not filed a separate claim against the Anahuac Entities that was pending at the time it filed its counterclaims. Litigation of Archer's counterclaims does not require the presence of third parties over whom the trial court cannot acquire jurisdiction; and Archer's counterclaims were mature at the time it filed its counter-petition because its claims accrued when

14

its dealings with the Anahuac Entities to pursue a federal grant fell through in the fall of 2009.

We conclude that Archer's counterclaims meet the criteria for compulsory counterclaims. *See* TEX. R. CIV. P. 97(a); *Luna-Prudencio*, 294 S.W.3d at 698. Thus, Archer also satisfied the "germane to" test within the meaning of *Reata Construction Corp. See Luna-Prudencio*, 294 S.W.3d at 698 (citing *Reata Constr. Corp.*, 197 S.W.3d at 374).

In addition, Archer's claims are properly defensive to the Anahuac Entities' claims. A finding in favor of Archer on any one of its counterclaims—i.e. that an oral or written contract demonstrated Archer's entitlement to the money, that the Anahuac Entities' own material breach of those agreements entitled Archer to damages, or that some equitable ground like quantum meruit or equitable estoppel entitled Archer to retain the money paid by the Anahuac Entities—would at least inferentially rebut the Anahuac Entities' claims that Archer obtained the $15,000 by mistake or fraud and wrongfully retained the money or that Archer otherwise violated the Theft Liability Act. *See Select Ins. Co.*, 561 S.W.2d at 477 ("The basic characteristic of an inferential rebuttal is that it presents a contrary or inconsistent theory from the claim relied upon for recovery."). A governmental entity that has asserted its own affirmative claims for monetary relief does not suffer undue harm "by allowing adverse parties to assert, as an offset, claims

15

germane to, connected with, and properly defensive to those asserted by the governmental entity," such as the claims asserted here by Archer. *See Albert*, 354 S.W.3d at 375; *Reata Constr. Corp.*, 197 S.W.3d at 377

The only relevant inquiry for jurisdictional purposes is whether Archer's claims, asserted to rebut and offset the Anahuac Entities' own affirmative claims for monetary relief, are "germane to, connected with, and properly defensive to those asserted by" the Anahuac Entities. *See Reata Constr. Corp.*, 197 S.W.3d at 376–77. We have already concluded that Archer's claims are germane to, connected with, and properly defensive to the Anahuac Entities' claims and, thus, that the Anahuac Entities do not have immunity from suit on those claims and that they must be tried. The Anahuac Entities, however, assert various arguments regarding the validity and interpretation of the Interlocal Agreement as grounds supporting their plea to the jurisdiction. They assert that no agreement was ever formed between them and Archer and that the terms of the Interlocal Agreement— to which Archer was not a party and to which, the Anahuac Entities argue, Archer was not an intended third party beneficiary—prevent Archer's counterclaims. These arguments go to the merits of claims asserted here by both the Anahuac Entities and Archer. We do not consider such merits-related arguments on appeal of a trial court's ruling on a plea to the jurisdiction. *See Tex. Ass'n of Bus.*, 852 S.W.2d at 443 (holding that we do not look at merits of case in reviewing plea to

16

jurisdiction, but instead construe pleadings in favor of plaintiff, look to pleader's intent, and accept pleadings' factual allegations as true). The Anahuac Entities may present their arguments on the merits of Archer's counterclaims in the trial court.

Because we conclude that Archer's counterclaims were germane to, connected with, and properly defensive to the Anahuac Entities' affirmative claims for monetary damages, we hold that the Anahuac Entities do not have immunity from suit with regard to Archer's counterclaims to the extent that any recovery under them would offset any recovery awarded to the Entities. *See Albert*, 354 S.W.3d at 374–75; *Reata Constr. Corp.*, 197 S.W.3d at 376–77. Accordingly, we hold that the trial court erred in granting the plea to the jurisdiction and that the trial court has subject-matter jurisdiction over Archer's counterclaims to the extent that Archer seeks damages that would offset any award of damages to the Anahuac Entities. *See Albert*, 354 S.W.3d at 374–75; *Reata Constr. Copr.*, 197 S.W.3d at 376–77.

We sustain Archer's sole issue.

## Conclusion

We reverse the order of the trial court granting the Anahuac Entities' pleas to the jurisdiction and dismissing Archer's counterclaims. We remand the case for further proceedings consistent with this opinion.


Evelyn V. Keyes
Justice

Panel consists of Justices Keyes, Higley, and Brown.